JAMES W. NORTON *vs.* CITY OF DULUTH *et al.*

Submitted on briefs July 10, 1893. Affirmed July 21, 1893.

**Designating an Official Newspaper for Duluth.**

> Assuming, for the purposes of this case, that such of the provisions of Laws 1893, ch. 33,—"An act defining what shall constitute a newspaper for the publication of the laws of the state and legal notices,"—as were inconsistent with certain charter provisions of the city of Duluth, had superseded the same, and should have guided and controlled the city council when it designated an official paper on the 24th day of April, 1893, it is *held* that the action of such council on that day, in awarding the contract for the official printing to the proprietor and publisher of a newspaper called "The Commonwealth," and in designating that paper as the official paper of the city for the then ensuing year, was proper and valid.

Appeal by plaintiff, James W. Norton, from an order of the District Court of St. Louis County, *J. D. Ensign*, J., made June 3, 1893, denying his application for a temporary injunction.

*Allen & Baldwin, Billson & Congdon*, and *Cash, Williams & Chester*, for appellant.

"The Commonwealth" has not been published for a year. It is a different paper from the "Short Line." Unless it has been published for one year it is not qualified to do the city printing.

*Henry F. Greene* and *White & Hewitt*, for respondents.

A newspaper is of itself a public print and imports publicity. A private newspaper would be a contradiction in terms. *Bailey* v. *Myrick*, 50 Me. 171. In the state of Illinois, a paper which printed only legal news was held to be, within the meaning of the law, a newspaper in which legal notices could be published. *Kerr* v. *Hitt*,

75 Ill. 51; *Hernandez* v. *Drake,* 81 Ill. 34; *Kellogg* v. *Corrico,* 47 Mo. 157. These cases hold that a paper conveying information to any considerable class, is a newspaper. *Hull* v. *King,* 38 Minn. 349.

COLLINS, J. By the terms of the charter of defendant city (Sp. Laws 1887, ch. 2, subch. 12, § 15) the city council was required at its first meeting in the month of April, in each year, to cause the city clerk to advertise in the then official newspaper for sealed proposals for publishing for the ensuing year the ordinances, official proceedings of the council, and other matters required to be officially published, in some daily newspaper which had been printed, published, and in general circulation in said city for at least six months prior to such advertising. On or about April 1, 1893, notice was given by advertisement in the official paper of the city that on the 17th day of that month sealed proposals for the official publications required by law would be received by the city council, and on that day proposals were received from three different parties. The lowest bidder was the defendant Schmied, publisher and proprietor of a daily newspaper called "The Commonwealth," and on the 24th of April the city council, by resolution, and in due form, awarded the city printing to said defendant for the ensuing year, and designated his paper as the official newspaper of the city for the same period of time. The plaintiff, as a taxpayer of the municipality, brought this action to restrain and enjoin the city and its officers from entering into the required contract for said printing, and this appeal is from an order denying his motion for a temporary injunction.

No question is made but that The Commonwealth was a competent paper, and answered all of the requirements of the charter, on the 1st day of April, 1893, for it had then been printed, published, and in general circulation, in the city of Duluth, as a daily newspaper, for more than six months. But it is the position of counsel for appellant that the competency and eligibility of The Commonwealth to become the official organ of the city was not to be ascertained under the provisions of the charter, but was to be determined by later legislation, which had, it is claimed, superseded the charter provision several days prior to the adoption of the resolution before mentioned. This legislation is an act entitled "An act defining what shall constitute a newspaper for publication of the laws of

the state and legal notices," (Laws 1893, ch. 33,) approved April 17th, the day on which the city council received and opened proposals for the public printing, as before stated. By the terms of section 5 of this statute it will be seen that all acts or parts of acts, whether general or special, inconsistent with the same, were repealed. The charter provision requiring that the paper designated by the council should be competent and eligible when the clerk advertised for proposals was unaffected by this statute, for in no manner was this provision inconsistent with anything found therein. For the purposes of this case, we assume that the general statute, in so far as it was inconsistent with the charter provisions, should have guided and controlled the city council when it accepted the proposals of defendant Schmied, and named The Commonwealth as the paper in which the ordinances, and all other matters required to be published, should appear. It was incumbent, then, upon the council, to select a daily newspaper which would answer and conform to the general definition and description found in section 1 of the act of 1893,—a paper that, for at least one year prior to the time when proposals were advertised for, had been printed, in whole or in part, in the city of Duluth, at an established office or place of business, equipped with material and workmen, as specified; a paper that had been generally circulated in the city for a like period of time, and of which 240 complete copies of each regular issue were printed, published, and delivered to the paying subscribers. It may be observed, in passing, that the statute does not require the printing, publishing, and delivery of any number of copies for the full period of one year, and we construe this requirement as solely referring to the time at which the competency and eligibility of the paper is to be determined.

This assumption in respect to the law of 1893 leads us at once to a consideration of the principal questions of fact in the case, which are: Was the paper called the "Daily Short Line," a newspaper, within the meaning of the law of 1893? and, if this be affirmatively held, was The Commonwealth a different paper from it? The paper bearing the name of "Daily Short Line" was established early in 1891, and was an advertising sheet intended for gratuitous distribution upon the cars and boats running into Duluth, and into its neighboring city of West Superior, in the state of Wisconsin, and

among the business houses in each city. In addition to advertise-ments, it contained two or three columns of short paragraphs, of a general nature. It was printed, and, we think, published, at West Superior. The defendant Schmied purchased it about March 1, 1892, and from the 21st day of that month had it printed by skilled workmen at an office in Duluth, and it was published at an estab-lished place of business in that city. From this time on there were printed and circulated, in the manner before mentioned, on the cars and boats, and among the business houses and offices of the city, about 500 copies each week day. It had no subscribers who paid directly, but this was not material if, in fact, it was a newspaper, within the statutory definition. See, also, the definition laid down in *Hull* v. *King*, 38 Minn. 349, (37 N. W. Rep. 792.) Copies of this sheet were introduced in evidence, and, by stipulation, were to have been forwarded for our information. This was not done, but from an inspection of a file of the Daily Short Line preserved in the rooms of the State Historical Society we find that from the 21st of March, 1892, it answered and conformed to the statutory descrip-tion and definition. It was larger than the statute of 1893 specifies, and was largely devoted to advertisements. It was not a preten-tious publication, but in each issue there were from eight to ten columns of "general and local news, comments, and miscellaneous literary items." The publisher continually improved its character and contents, so that by June 1st it contained several more columns of ordinary reading matter, including telegraphic items; but, de-siring to change its style of publication and circulation, the name was changed to "The Commonwealth" on September 29, 1892. There was no change in the general appearance of the paper, and we are clearly of the opinion that its legal identity was preserved. It was the same newspaper under a different name, but this change of name had no more effect upon its identity as the same publication than would have had a change of proprietors. Within a very few weeks after this change, and by degrees, the old method of gra-tuitous distribution was abandoned, and the paper delivered to sub-scribers only. That it had developed into a very respectable daily newspaper some time before April 1, 1893, and that it then had the required number of paying subscribers, is not disputed. We con-clude, then, upon the facts, that the resolution of the city council,

whereby it accepted the proposal of defendant Schmied and awarded to him the official printing for the then ensuing year, the same to be done in The Commonwealth, was authorized and valid.

Order affirmed.

(Opinion published 56 N. W. Rep. 80.)