## R. G. SODERBERG v. DOROTHY HALVER.

150 N. W. (2d) 27.

April 7, 1967—No. 40,182.

*Julius A. Coller II,* for appellant.
*John A. Cochrane,* for respondent.

NELSON, JUSTICE.

This is an appeal from an order granting defendant's motion for judgment notwithstanding the verdict. It involves a libel action com-

menced by Richard G. Soderberg against Dorothy Halver. The jury returned a verdict in favor of plaintiff for punitive damages only.

Plaintiff was the city engineer for Shakopee from 1956 through 1958 and as such was an official of the city during his tenure in office.

"The Voice of the People," a mimeographed circular, was published by defendant at regular intervals during the years from 1955 to 1963. The testimony indicates that it was published on at least an annual basis for 8 years, and the volume and issue number of one issue introduced at the trial would indicate that in some years it had as many as 8 issues. The issues were sent by mail to those listed in the telephone directory of Shakopee. The specific issue complained of is volume 8, number 1, consisting of 9 pages. It contains articles ranging from raising revenue by the use of a municipal liquor store to the qualifications of certain candidates for the city council. Based on an article entitled "Shades of Soderberg," plaintiff brought this suit for libel. This article reads as follows:

"When Dr. Halver was mayor, there was a city engineer named Richard Soderberg. He was a minor tyrant in his field. He brooked no opposition, accepted no criticism. When Dr. Halver asked for a study of the lagoon sewage disposal plan, this engineer went and got two quarts of muddy water to prove a point. The council swallowed the muddy water, figuratively at least. Consequently, we are now paying for the most expensive and least efficient sewage disposal plant. You realize, don't you, that you will have to pay for an expensive secondary plant in the near future?

"Now there has been serious criticism of the storm sewers planned by this same engineer. The mistakes of the mighty could be mildly amusing if the people of Shakopee did not suffer.

"Shakopee has always needed a council that will stand up for the rights of the people."

■ The main issue presented on this appeal is whether "The Voice of the People" constituted a "newspaper" and thus required a demand for retraction by plaintiff under Minn. St. 548.06 before puni-

tive damages could be awarded. Minn. St. 331.01 defines "newspaper" as follows:

"The term 'newspaper' includes any newspaper, *circular, or other publication issued regularly or intermittently* by the same parties or by parties one of whom has been associated with one or more publications of such newspaper or circular, whether the name of the publication be the same or different." (Italics supplied.)

This court has not specifically decided how broad this definition is. However, the term "circular" includes a number of writings. In 14 C. J. S., Circular, it is defined as follows:

"A paper intended to be issued to a great number of persons or for general circulation; * * * [and] has been held to include a memorandum book containing advertising matter for general circulation * * *."

In Webster's Third New International Dictionary (1961) p. 409, "circular" is defined as—

"an announcement, advertisement, or directive typically in the form of a printed leaflet intended to be sent to many persons or otherwise distributed widely."

It can be concluded from these definitions that the term "circular" is broad enough to include the publication entitled "The Voice of the People" within the definition of "newspaper" in § 331.01.

It will be noted that § 331.01 further requires that the circular be issued or published at least intermittently. 47 C. J. S., Intermittent, states:

"Ceasing at intervals; that alternately stops and starts * * *. The word embodies the idea of temporary cessation, discontinuance, interruption, pause.

"'Intermittently.' The adverb of 'intermittent.' It is the antithesis of 'continuously' * * * and has been distinguished from 'alternately' * * *."

22 Wd. & Phr. (Perm. ed.) p. 356, states that the word "intermittent" embodies "temporary discontinuance, interruption, cessation,

pause, 'continuously' being antithetic to intermittently." Webster's Third New International Dictionary (1961) p. 1180, defines "intermittent" as "coming and going at intervals: not continuous: alternating, recurrent, periodic."

■ Minn. St. 548.06 provides:

"In an action for damages for the publication of a libel in a newspaper, the plaintiff shall recover no more than special damages, unless a retraction be demanded and refused as hereinafter provided. He shall serve upon the publisher at the principal place of publication, a notice, specifying the statements claimed to be libelous, and requesting that the same be withdrawn. If a retraction thereof be not published on the same page and in the same type and the statement headed in 18 point type or larger 'RETRACTION,' as were the statements complained of, in a regular issue thereof published within one week after such service, he may allege such notice, demand, and failure to retract in his complaint and recover both special and general damages, if his cause of action be maintained. If such retraction be so published, he may still recover general damages, unless the defendant shall show that the libelous publication was made in good faith and under a mistake as to the facts. If the plaintiff was a candidate for office at the time of the libelous publication, no retraction shall be available unless published on the same page and in the same type and the statement headed in 18 point type or larger 'RETRACTION,' as were the statements complained of, in a regular issue thereof published within one week after such service and in a conspicuous place on the editorial page, nor if the libel was published within one week next before the election. This section shall not apply to any libel imputing unchastity to a woman."

The legislature must be presumed, we think, to have considered the interrelationship of these two statutes as § 331.01 was passed in 1931 and § 548.06 was amended in 1937. Both statutes are free from ambiguity in approaching the purpose of their enactment.

Since the record shows that "The Voice of the People" was published at Shakopee; was distributed by mail under a bulk mail newspaper permit by the United States Post Office to the residents shown

in the Shakopee telephone directory for a period of 8 years; discussed newsworthy and topical events; was published and distributed not less regularly than every election and sometimes more frequently; carried a masthead of "The Voice of the People" showing date of publication and the name and address of the editor and publisher; stated that its purpose was "to inform the people of Shakopee"; and gave the volume and number with paging, date, and place of publication, we think that it is clearly subject to the provisions of § 548.06. Norton v. City of Duluth, 54 Minn. 281, 56 N. W. 80. See, also, the definition laid down in Hull v. King, 38 Minn. 349, 37 N. W. 792. Under this statute a demand for retraction places the burden on the publisher to comply with the provisions of § 548.06 and to publish the retraction within one week of the receipt of the notice or be subject to punitive damages. If the publisher fails to comply strictly with § 548.06, he suffers the consequences, but he is first entitled to the statutory notice and demand for retraction.

This court, we feel, is bound to take judicial notice that there are hundreds of newspapers published by high schools and other educational institutions, church and civic organizations, veterans' organizations, and individuals, which are in fact newspapers within the meaning of § 331.01 and governed by § 548.06, thus subject to the sanctions of the law because capable of being a medium for a libel suit. Upon receipt of a statutory demand for retraction under the latter statute, the publisher of one of these newspapers has the option to make a retraction by circularizing his readers within a one-week period with a retraction and thereby to avoid becoming subject to payment of punitive damages for libel.

It is clear from the court's memorandum accompanying its order granting defendant's motion for judgment notwithstanding the verdict that the trial court upon reflection was of the opinion that the publication involved in the case at bar was issued at least intermittently, if not regularly, as required by the statute and that therefore a retraction would necessarily have to be demanded under § 548.06 before punitive damages could properly be assessed against defendant. The legislature has spoken on that issue and the courts are thus prohibited

from overriding the foregoing statutory provisions. We must accept the provisions which so clearly set forth the legislative intent relative to the subject of newspaper libel in this state. The order of the trial court is therefore affirmed.

Affirmed.