NOBLE KELLOGG, Appellant, *v.* WALTER CARRICO *et al.*, Respondents.

47 157
139 366
47 157
154 158
47 157
178 ²575

1. *St. Louis Record — Judicial publication in, imparted notice.*— A paper devoted to the gathering up and dissemination of legal news may be a newspaper, and in that sense the *St. Louis Legal Record* was a newspaper, and publication in it imparted notice of a sale under deed of trust.

2. *Sales, judicial — Advertisement — Sunday non dies.*— Publication of notice of judicial sale from March 12th to April 15th, inclusive, satisfied the requirements of a deed calling for thirty days' notice of sale. The Sunday omissions did not vitiate the notice.

3. *Sale of land — Description.*— Although a deed of trust described the real estate conveyed as two separate parcels of land, yet where it appeared that the parcels constituted but one farm, and by the advice of the trustees and with the assent of the beneficiary they were sold together, such sale was proper.

*Appeal from St. Louis Circuit Court.*

*Voorhies & Mason*, for appellant.

*Taussig & Kellogg*, for respondents.

CURRIER, Judge, delivered the opinion of the court.

The plaintiff sues in equity to set aside a sale under a deed of trust, and for liberty to redeem. The proceeding is founded upon an averment of fraud in the sale, and of various irregularities attending it. The deed described two separate parcels of land, and provided that "thirty days' public notice" should be advertised in some St. Louis newspaper, in case the property should be sold under the deed. It appears that the notice, in this case, was published in the *St. Louis County Legal Record and Advertiser* from March 12, 1861, to the 15th day of the following April; that the publication was had on each secular day during that period; and further, that the two parcels of land were put up in connection and sold together, the sale occurring on the last day of publication, namely, April 15, 1861.

It is objected that the *Legal Record and Advertiser* was not a "newspaper," that the notice was not advertised on thirty different days prior to the sale; and further, that the sale of the two lots together was unwarranted.

1. The *Legal Record and Advertiser* was printed in St. Louis in the form of a newspaper, and was issued to its subscribers daily except Sundays, when the publication was omitted. It was devoted to the dissemination of general legal intelligence, and engaged extensively in legal advertising, including the publication of notices of sales under deeds of trust, and sales on execution and all judicial sales. It was a law and advertising journal, and so, in a limited sense at least, a newspaper; for whether a newspaper or not is a question that can not be determined by a consideration alone of the kind of intelligence it disseminated. It is not the particular kind of intelligence published that constitutes one publication a newspaper rather than another. Newspapers are devoted to the dissemination of intelligence on a great variety of subjects, such as politics, commerce, temperance, religion, and so on; and the law and legal topics and occurrences are not excluded from the range of newspaper enterprise. A paper devoted to the gathering up and dissemination of legal news among its readers is, or at least may be, a newspaper. I regard the *Legal Record* as a newspaper of that character. The more important inquiry, however, is, was it such a newspaper as the parties to the deed of trust contemplated? In other words, was a publication in it adapted to impart notice of the impending sale to the defendant and the public? Its circulation outside of St. Louis county was very limited, but within that county it was well known, and generally recognized as the proper medium for the publication of all legal notices required by law to be published in St. Louis county, including notices of sales under deeds of trust. While the act of 1861 (Sess. Acts 1861, p. 101) remained in force, the *Legal Record* was uniformly employed by advertisers in accordance with the terms of that act. During that period it is not shown that any sale under a deed of trust took place in St. Louis without a notice of the sale being first advertised in that paper. A further publication was frequently had in other newspapers, it is true, and with a view, doubtless, to avoid the question here raised. The *Legal Record* was kept on file in public and private offices, because of the fullness of the information it

imparted upon all subjects falling within the compass of its particular department. It circulated particularly among real estate dealers and those giving special attention to real estate sales at public vendue. To that extent it was eminently well adapted to subserve the purposes of the parties to the deed of trust, in requiring the sale by the trustee to be advertised in some newspaper. It was not required by the deed that the notice should be published in the newspaper having the largest circulation, or any specific circulation, or in a newspaper devoted to the publication of intelligence of one particular class or character. In the exercise of integrity and fair intelligence, the trustees were left perfectly free to select any newspaper printed in St. Louis which they might regard as a suitable medium for the required publication. In other words, the selection was left to their discretion. There is no suggestion of unfairness or want of perfect good faith on their part, nor is it claimed that the plaintiff was actually injured by their action in this behalf. The case shows that the plaintiff had actual notice of the sale, and that he attended it in person; that he raised no objection to the sufficiency of the notice, or to the regularity and legality of the sale. He in fact swears that the property was bid off by the purchaser in his (plaintiff's) interest and for his benefit. Under these circumstances, to hold the sale invalid at his suggestion, on account of the character or limited circulation of the newspaper in which the notice of sale was published, would seem unjust and unwarranted. Had the property been bought in by a stranger, the plaintiff would undoubtedly be regarded as having waived the objection he now urges. (Taylor v. Chowning, 3 Leigh, 654.) As the case stands, we are not inclined to hold this sale — and so all sales made under like circumstances and under like publication of notice — as invalid for the cause here assigned.

2. The publication of notice on each successive secular day, from March 12th to April 15th, inclusive, satisfied the requirements of the deed as to the duration of the publication. The deed required thirty days' notice. Its publication covered a period of thirty-four days, and appeared in each daily issue of

the paper, there being no publication on Sundays. The Sunday omissions did not vitiate the notice. (Johnson v. Dorsey, 7 Gill, Md., 269; Leffler v. Armstrong, 4 Iowa, 482.)

3. Although the deed of trust described two separate parcels of land, these parcels nevertheless constituted but one farm. For the purpose of the farm and of the sale it was considered advantageous to keep the property together. That was the judgment of the trustees, on consultation at the sale, the plaintiff being present and making no objection; and there was testimony tending to show that the two lots were sold in conjunction in accordance with his declared wishes. The trustees were in this matter bound to act in perfect good faith toward the parties in interest, and they appear to have done so. Nor is there anything to indicate that the plaintiff was injured or prejudiced by the manner of the sale. He hoped to repossess himself of the property, and he in fact testified, as has already been remarked, that it was purchased at the sale in his interest. Under these circumstances the trustees were justified in selling the lots together. (Gillespie v. Smith, 29 Ill. 473.)

4. On the question of fraud in fact the evidence is extended and conflicting. I do not propose to examine it in detail. It appears, in brief, that the plaintiff, in March, 1854, purchased the premises in dispute from the defendant, Walter Carrico, for the sum of $5,800. Eighteen hundred dollars was paid down, and the balance of $4,000 put into four notes of $1,000 each, payable in one, two, three and four years, with interest at six per cent. On the 1st of March, 1860, no part of the principal of these notes had been paid, and there was a balance of interest in arrear. The notes were secured by deed of trust upon the property conveyed to the plaintiff by Walter Carrico. At the date last mentioned an arrangement was made between the parties, in virtue of which the old notes and deed of trust were surrendered, and a new note for $4,960 given in lieu of them, which was secured by deed of trust on the same property, except seven acres previously sold by the plaintiff. The new note was made payable in one year from date, with interest at ten per cent. from maturity. The new note matured and was not paid, where-

upon the defendants insisted upon a payment of the debt or a sale of the property under the deed of trust. Payment not being made, the property was advertised and sold, as we have seen. At the sale Felix Carrico purchased the property in his own name for the amount due under the deed of trust, and subsequently conveyed it to his father, who was the payee of the note described in the deed. The whole amount then due was $5,075, the sum of $960 of interest being in arrear. The plaintiff's note was indorsed as satisfied by the proceeds of the sale under the deed of trust, and thereupon surrendered into his (the plaintiff's) possession, and he has ever since retained it. Thus far the facts are not in dispute, and these facts fail to show any wrong or oppression on the part of the Carricos. But the plaintiff complains that he was misled by the verbal assurances of the Carricos to the effect that the debt might lie indefinitely, or so long as the interest was paid. There is nothing in this objection, for it appears that the interest was not paid ; that nearly a thousand dollars of interest was in arrear when the property was sold, and that the Carricos had indulged the plaintiff for years on both interest and principal. Their conduct in this regard was unexceptionable.

It is further objected that the defendants, in April, 1861, insisted on coin for their debt, refusing to take Missouri bank-bills at par in payment. Had they not an undoubted right to do this? Coin was then the legal medium of payment. Paper money was at a discount, and the gist of the complaint on this subject is that the Carricos declined to receive their debt in depreciated paper money. There is no force in this objection. Had the creditors induced the plaintiff to suppose that bank paper would be satisfactory, and then suddenly demanded coin when it was too late for the debtor to procure it, the case would be different ; and so the character of the case would be changed had the defendants demanded coin capriciously, or for the mere purpose of oppression, refusing the equivalent of coin in current paper money. But nothing of this appears in the case.

Again, it is insisted that the Carricos agreed to let the plaintiff in to redeem, notwithstanding the sale, and that the parties were

11—VOL. XLVII.

remitted to their original relations of debtor and creditor under the deed of trust. The evidence fails to show the fact on which this objection is based. The relation of debtor and creditor can not exist without a subsisting debt; but, as we have seen, at the consummation of the sale and conveyance under the deed of trust, the plaintiff received his note back as satisfied by the proceeds of that sale. This shows what the transaction was, and how the parties understood it; that the debt was paid, and consequently that the relation of debtor and creditor ceased from that moment. (Medsker v. Swaney, 45 Mo. 273.)

It further appears that after the full consummation of the sale and the surrender to the plaintiff of his note, the plaintiff accepted from one of the Carricos a paper writing, recognizing in the former a right to re-acquire the property on certain conditions, which were never complied with. Prior arrangements and understandings, if any existed, would seem to be merged in this written memorandum of the understanding between the parties. The Carricos did not at that time appear to want the property; they wanted their money, but it was never paid or tendered.

It moreover appears that the plaintiff had an opportunity to re-acquire the property more than a year after the sale for a sum equal to the amount of his original debt, interest and costs. He did not avail himself of it. Real estate was then greatly depressed. It has since risen in market value, but that is no reason for overturning the original sale. This suit was not brought till July, 1865, more than four years after the sale, and some months after the termination of the civil war, which divided and distracted the country at the time the sale was made.

Some question has been raised as to the relation of the Carricos between themselves and their respective relations to the note of March 1, 1860. It is not perceived that the plaintiff has any concern with these matters. Felix Carrico acted throughout as the owner of the note, or the agent of the owner, and it can make no difference to the plaintiff whether he acted as the principal or the agent of the principal.

Judgment affirmed. The other judges concur.