A. E. HULL vs. WILLIAM S. KING.

April 30, 1888.

**Foreclosure by Advertisement — Religious Weekly held a "Newspaper."**—A paper issued weekly, containing principally religious news, and especially reading of interest to persons of a particular religious denomination, but containing a column each week devoted to the general news of the day, embracing every sort of news of interest to the general reader, is a "newspaper" within the meaning of Gen. St. 1878, c. 81, § 5, in which notice of sale on mortgage may be published.

**Same—Several Lots Separately Mortgaged in One Instrument—Sale in Gross.**—Where an instrument constitutes, in effect, several separate and distinct mortgages upon several separate lots, to secure several separate and distinct sums of money, although for convenience all are consolidated in one writing, a sale of all the lots together as one tract, for a gross sum, is unauthorized and void.

**Same — Action to Avoid Sale — Limitation.**—The mortgagor is not required to bring an action to set aside such unauthorized sale before the expiration of the year for redemption. *Abbott* v. *Peck*, 35 Minn. 499, distinguished.

Action to set aside a mortgage sale under a power, brought in the district court for Hennepin county, and tried by *Lochren*, J., upon whose decision judgment was entered for plaintiff, from which the defendant appeals.

By the terms of the mortgage, the mortgagors, in consideration of $5,350, convey all "the following described lots," according to the plat, etc., "each of said lots being conveyed and mortgaged respectively for the specific sum set opposite to it in the following tabular description of the premises herein and hereby mortgaged, and for no other sum whatever, except the interest and attorney's fees and charges hereinafter mentioned in case of foreclosure, to wit:

| "No. of Lot. | No. of Block. | Sum mortgaged for. |
|---|---|---|
| "Lot one (1) | In Block twenty nine | $750." |

The list included six other lots entered in the same way, four of them being mortgaged for $750 each, and two for $800 each.

The condition of the mortgage is for payment of $5,350, in five years, "according to the terms and conditions of seven promissory notes   *   *   *   for the respective amounts aforesaid set opposite to the several lots hereinbefore mentioned." And it is further stated as "the intention hereof that this mortgage shall be regarded and is hereby made a separate and distinct instrument and mortgage for each and every of the lots hereinbefore described," etc. It appeared from the sheriff's certificate of sale, and the court found, that the lots were offered separately, without bidders, before they were offered in gross.

*Gordon E. Cole,* for appellant.

*Harlan P. Roberts,* for respondent.

MITCHELL, J.   The plaintiff sought to have a foreclosure by advertisement set aside, upon the grounds (1) that the notice of sale was not published in a "newspaper," within the meaning of the statute; (2) that the whole seven lots covered by mortgage were sold together in bulk for a gross sum.

1. The notice of sale was published in the "Northwestern Presbyterian." The evidence is not returned, but the finding of the court is that this is "a publication issued once in each week, in Minneapolis, Hennepin county, Minnesota, and contains principally religious news, and especially reading of interest to Presbyterians; that said paper contains one column each week devoted to the general news of the day, embracing every sort of news of interest to the general reader." We assume that this means that it is similar to the ordinary so-called religious papers, which, while their chief object is the dissemination of religious news, and especially such as would be of interest to some particular denomination, contain also, more or less in full, the general current news of the day.   As was said by this court in *Beecher* v. *Stephens,* 25 Minn. 146: "Newspapers are of so many varieties that it would be next to impossible to give any brief definition which would include and describe all kinds of newspapers." It would therefore be unsafe to attempt to give any definition of the term, except the very general one that, according to the usage of the business world, and in ordinary understanding, a newspaper is a publication, usually in sheet form, intended for general circulation, and published

regularly at short intervals, containing intelligence of current events and news of general interest. *Beecher* v. *Stephens, supra;* 4 Op. Attys. Gen. 10; Abb. Law Dict. tit. "Newspaper;" *Attorney General* v. *Bradbury*, 7 Exch. 97, 103. But, if a publication contains the general and current news of the day, it is none the less a newspaper because it is chiefly devoted to the dissemination of intelligence of a particular kind, or to the advocacy of particular principles or views. Most newspapers are devoted largely to special interests, political, religious, financial, moral, social, and the like, and each is naturally patronized mainly by those who are in accord with the views which it advocates, or who are most interested in the kind of intelligence to which it gives special prominence. But, if it gives the general current news of the day, it still comes within the definition of a newspaper. *Kerr* v. *Hitt*, 75 Ill. 51; *Hernandez* v. *Drake*, 81 Ill. 34; *Kellogg* v. *Carrico*, 47 Mo. 157. It might be good policy on part of the legislature to limit the publication of legal notices to such kinds of newspapers as are most likely to circulate generally among the general public in the community where published. But it has not done so. All that the statute requires is that the notice of foreclosure sale be published in a "newspaper;" and, under the facts found by the court, we are of opinion that this publication is a "newspaper," within the meaning of the statute.

2. The second objection to this foreclosure, however, is, in our opinion, well taken. By reference to the instrument, (Exhibit C,) it will be seen that it is, in effect, seven distinct and separate mortgages upon seven lots, to secure seven separate and distinct sums of money, although, for convenience, all consolidated in one instrument. There was no more authority for selling the seven lots all together for a gross sum than if each lot had been mortgaged by a separate and distinct instrument. The sale was therefore clearly unauthorized and void.

3. There is nothing in the suggestion that this suit should have been brought within one year after the sale. The case of *Abbott* v. *Peck*, 35 Minn. 499, (29 N. W. Rep. 194,) cited by appellant, merely holds that, where a sale is voidable for an irregularity, a party may lose his remedy by unreasonable delay, which, under the facts of that case, he was held to have done by delaying until after the expiration

of the time of redemption; the complaint failing to disclose any excuse for the delay, or any special equities on part of the plaintiff. In the present case the sale was not simply irregular and voidable, but wholly unauthorized and void.

Judgment affirmed.