EDWARD LYNCH v. EDGAR O. DURFEE, JUDGE OF PRO-
BATE OF WAYNE COUNTY.

*Estates of deceased persons—Probate notices—Newspaper.*

1. The power to determine in what *particular* newspaper probate notices shall be published is left by the statute to the probate court.

2. Where a judge of probate is ordered to show cause why a writ of prohibition should not issue restraining the appointment by him of an administrator, on the ground that the paper in which the notice of the hearing of the petition for such appointment was published is not a newspaper, within the meaning of the statute regulating the publication of probate notices, the return of the probate judge as to the character of said paper is binding upon the court issuing such order.

3. The probate judge set up in his answer that the paper was a newspaper, published weekly in the city where his court was held; that, while devoted primarily to the interests of the legal profession, it also contained matters of interest to the general public; that it contained the proceedings of the Supreme Court, and of the courts of the city and county in which it was published; that it contained, from time to time, opinions of the federal courts, of those of other states, and of those of other counties in Michigan, where the same were of interest to the legal profession or to the general public; that it contained personal items of general interest and notices of passing events, and was intended, during the sessions of the Legislature, to contain its proceedings, and general items of interest in connection therewith; that it contained a record of real-estate transfers, mortgages, and bills of sale, and also advertisements, not only relating to the legal profession, but general trade advertisements, of interest to every one; that it circulated among judges, lawyers, bankers, brokers, real-estate agents, merchants, and business men, and was intended to contain items of importance to all, and was on sale at the news stands in the city where published. And it is held that the answer shows that the paper in question is a newspaper, within the meaning of How. Stat. § 5866, which provides that notice of the time and place of hearing an application for the appointment of an administrator shall be published in such news-

paper as the probate judge may direct, and of How. Stat. §
6808, which provides that all probate notices required by law
to be published by the judge of probate of any county shall
be published in some newspaper printed in the county where
he shall hold his court.

*Certiorari* to Wayne.    (Donovan, J.)    Argued June 5,
1894.   Decided June 16, 1894.

Relator applied to the circuit court for a writ of pro-
hibition to restrain respondent from appointing an admin-
istrator in the matter of the estate of Timothy Lynch,
deceased, and brings *certiorari* to review the order denying
said writ.    Affirmed. · The facts are stated in the opinion.

*Edwin F. Conely* and *Orla B. Taylor,* for relator.

*Charles B. Warren,* for respondent.

LONG, J.   Petitioner is one of the heirs at law of Tim-
othy Lynch, deceased.   On April 23, 1894, a petition was
filed in the probate court for Wayne county by Patrick
Lynch, a brother of petitioner, praying for the appoint-
ment of an administrator, as the deceased died intestate.
An order was entered that the matter be set for hearing
on May 22, 1894, and that notice of hearing be published
in the Wayne County Legal News.   Petitioner filed a
protest against the appointment, on the ground, among
others, that the Wayne County Legal News, in which the
notice was published, was not a newspaper printed and
circulating in said county and State, within the meaning
of the statute.   This protest was overruled, and petitioner
made application to the Wayne circuit court for a writ of
prohibition against the probate judge, restraining the
appointment on that ground.   An order to show cause
was granted, and the probate judge answered.   Upon the
hearing, the writ of prohibition was denied.   The case
now comes here on *certiorari* to review that finding.

How. Stat. § 5801, provides that the probate court shall appoint a time and place for proving any will, and " shall cause public notice thereof to be given by personal service on all persons interested, or by publication under an order of such court in such newspaper printed in this State as the judge shall direct, three weeks successively," etc.

Section 5866 provides that—

" When application shall be made to the judge of probate for the appointment of an administrator on an intestate estate, or for letters of administration with the will annexed, he shall cause notice of the same, and of the time and place of hearing thereof, to be published for three successive weeks in such newspaper as he may direct."

Section 6808 provides:

" All probate and other legal notices required by law to be published by the judge of probate of any county * * * shall be published in some newspaper printed in the county where said probate judge shall hold his court."

Section 9031 provides that—

" All legal advertisements shall be published in a newspaper printed in the county in which the proceedings are carried on," etc.

These are the only provisions of our statutes relating to such publication.

The answer of the judge of probate made to the order of the court below to show cause sets up that the Wayne County Legal News is a newspaper, published weekly in the city of Detroit, and, while devoted primarily to the interests of the legal profession and the dissemination of legal knowledge, yet it is also intended to contain, and does contain, matters of interest to the general public; that it contains the proceedings of the Supreme Court of the State of Michigan, the Wayne circuit court, and the other courts of the city of Detroit, and also contains notices of future proceedings in said courts; that it also con-

tains, from time to time, opinions of the courts of the United States and of the other States, and also of other counties in Michigan, where the same are of interest to the legal profession or to the general public; that it also contains personal items of general interest, and notices of passing events; and respondent asserts on information and belief that it is intended, when the Legislature is in session, to contain the proceedings thereof, and general items of interest in connection therewith. The answer further states that it contains a record of real-estate transfers and mortgages, chattel mortgages, and bills of sale, and also advertisements, not only relating to the legal profession, but general trade advertisements, of interest to every one; that it is intended to circulate, and in fact has a present circulation, among judges, lawyers, bankers, brokers, real-estate agents, merchants, and business men, and is intended to contain items of importance to all, and is on sale at the news stands in the city of Detroit. The answer further asserts that the Wayne County Legal News is intended to fill the same position in the county of Wayne, State of Michigan, as is filled at present by the Chicago Legal News, the Toledo Legal News, the St. Louis Legal Record, and other papers of similar nature in other cities; that it is not an innovation in the newspaper field, there being, as respondent asserts, upwards of 40 similar journals now published. A copy of the paper is filed with this return, as well as copies of the Chicago Legal News and other legal journals, which indicate the actual character of the Wayne County Legal News, and the field which it is intended to cover.

Similar provisions to sections 5801 and 5866, above referred to, are to be found in the Revised Statutes of 1846; the other provisions quoted were enacted in 1853 and 1857; so that these statutes were on the statute books long before the newspaper field was occupied by the many

thousands of publications we now find in circulation. But a newspaper, even in the days when these statutes were enacted, meant what it means to-day,—a sheet of paper printed and distributed at short intervals for conveying intelligence of passing events; a public print that circulates news, advertisements, proceedings of legislative bodies, public documents, and the like. Under the return here we are unable to say that this paper does not come within this definition. Our statutes are quite similar to those of other states in reference to the publication of such notices. The Chicago Legal News was held to be a newspaper within the meaning of the Illinois statute. *Kerr v. Hitt,* 75 Ill. 51. The St. Louis Legal Record was held to be such a newspaper within the meaning of the Missouri statute in *Kellogg v. Carrico,* 47 Mo. 157. See, also, *Hernandez v. Drake,* 81 Ill. 34; *Railton v. Lauder,* 126 Id. 129; *Id.,* 26 Ill. App. 655; *Maass v. Hess,* 140 Ill. 576; *Benkendorf v. Vincenz,* 52 Mo. 441; *Hull v. King,* 38 Minn. 349; *Beecher v. Stephens,* 25 Id. 146.

It was said in *Beecher v. Stephens, supra:*

"Newspapers are of so many varieties that it would be next to impossible to give any brief definition which would include and describe all kinds of newspapers."

In *Hull v. King, supra,* the court quote this language, and further say:

"It would therefore be unsafe to attempt to give any definition of the term, except the very general one that, according to the usage of the business world and in ordinary understanding, a newspaper is a publication, usually in sheet form, intended for general circulation, and published regularly at short intervals, containing intelligence of current events and news of general interest. * * * But if a publication contains the general and current news of the day, it is none the less a newspaper because it is chiefly devoted to the dissemination of intelligence of a particular kind or to the advocacy of particular principles or views. Most newspapers are devoted largely to special

interests,—political, religious, financial, moral, social, and the like; and each is naturally patronized mainly by those who are in accord with the views which it advocates, or who are most interested in the kind of intelligence to which it gives special prominence. But if it gives the general current news of the day, it still comes within the definition of a newspaper."

In the case of *Kellogg v. Carrico, supra,* the question was raised as to the validity of a publication in the St. Louis County Legal Record and Advertiser. It was objected that such paper was not a newspaper. The court said:

" The Legal Record and Advertiser was printed in St. Louis in the form of a newspaper, and was issued to its subscribers daily, except Sundays, when the publication was omitted. It was devoted to the dissemination of general legal intelligence, and engaged extensively in legal advertising, including the publication of notices of sales under deeds of trust, and sales on execution, and all judicial sales. It was a law and advertising journal, and so, in a limited sense at least, a newspaper; for whether a newspaper or not is a question that cannot be determined by a consideration alone of the kind of intelligence it disseminated. It is not the particular kind of intelligence published that constitutes one publication a newspaper rather than another. Newspapers are devoted to the dissemination of intelligence on a great variety of subjects, such as politics, commerce, temperance, religion, and so on; and the law and legal topics and occurrences are not excluded from the range of newspaper enterprise. A paper devoted to the gathering up and dissemination of legal news among its readers is, or at least may be, a newspaper. I regard the Legal Record as a newspaper of that character."

The statute of Illinois provides that the publication of legal notices shall be in a secular newspaper of general circulation, or some paper specially authorized by law to publish legal notices, and the question was raised as to whether the Chicago Legal News came within the definition of a secular newspaper. In the case of *Kerr v. Hitt,* the court said:

"The Chicago Legal News is published in the city of Chicago, in the county where this proceeding was commenced; is published once a week; is devoted principally to the dissemination of legal intelligence, but makes reference to passing events, contains advertisements, brief notices of legislative bodies, personal and political items of interest to the general reader, as well as the legal profession. Thus it will be seen it comes, substantially at least, within the definition given by lexicographers of a 'newspaper.' It is none the less a newspaper because its chief object is the publication of legal news. Many newspapers published in this and other countries are devoted chiefly to special interests,—such as religious and political newspapers; others devoted exclusively to literature,—that contain advertisements, news items, personal and political, brief notices of matters of special public concern, and reference to proceedings of legislative and other public bodies. So it is with this journal. Besides legal it contains other items of news, not only connected with the bench and bar, but others of a general interest. It is that class of journal that will circulate among lawyers, real-estate and other business men, for it contains information in regard to sales of real estate, whether under judicial process or under powers. Accordingly, its advertising columns contain notices of sales under trust deeds, on execution, judicial sales under decrees of court, and all manner of notices of legal transactions, as well as a limited number of other advertisements usually found in a newspaper of general circulation."

In the later case of *Railton v. Lauder, supra,* it was held that the Chicago Daily Law Bulletin was a newspaper within the meaning of the statute, the purpose of the paper being similar to that of the Chicago Legal News.

The court below was bound by the return of the probate judge as to the character of the Wayne County Legal News, and by that return it appears that such paper is as much a newspaper within the meaning of our statute as were the Chicago Legal News and the St. Louis Legal Record newspapers within the meaning of the statutes of

Illinois and Missouri.    We think the return shows this journal to be a newspaper within the meaning of our statute.    It has a general circulation, and contains the general news of the day; and we have no power to determine what particular paper shall publish probate notices.    That question is left by statute to the probate court.

We find no error in the record, and the finding of the court below will not be disturbed.

The other Justices concurred.