ANDREW J. HANSCOM, APPELLEE, V. MAX MEYER ET AL., APPELLANTS.

FILED MARCH 21, 1900. No. 11,073.

1. **Definition of Newspaper:** EVIDENCE: OMAHA MERCURY. Evidence examined, and found that the Omaha *Mercury* is a weekly publication, circulating among various classes of people within the county and state; that its printed matter consists principally of legal notices and information regarding the courts, and of legal matters in general, and also advertising of a miscellaneous character, literature of a general kind, and a limited amount of general news of current events. *Held,* That such publication is a newspaper within the meaning of section 497 of the Code of Civil Procedure; that the fact that it also makes a specialty of some particular class of business, and conveys intelligence of particular interest to those engaged in such business, will not thereby deprive it of its general classification as a newspaper within the meaning of the statute.

2. ———: STATUTE. *Held, also,* That the principal distinguishing feature of a newspaper, in contemplation of the statute, is that it be a publication, appearing at regular or almost regular intervals, at short periods of time, as daily or weekly, usually in sheet form, and containing news; that is, reports of recent occurrences, political, social, moral, religious and items of a varied character, both local and foreign, intended for the information of the general reader.

APPEAL from the district court of Douglas county. Heard below before KEYSOR, J. *Affirmed.*

*James H. McIntosh, Lodowick F. Crofoot* and *Charles S. Elgutter,* for appellants, for definition of newspaper, cited Bouvier's Law Dictionary; Abbott's Law Dictionary; Century Dictionary; *Beecher v. Stephens,* 25 Minn., 146; *Hull v. King,* 38 Minn., 349.

Our court has expressed itself as follows: "Legal advertisements should not be inserted in an obscure paper where the probabilities are that they will be seen by but few, when there is a paper of general circulation in the county, because the object of the law will be in part at least defeated." *State v. Holliday,* 35 Nebr., 327. To this point, counsel cited *Kerr v. Hitt,* 75 Ill., 51; *Kellogg v. Carrico,* 47 Mo., 157; *Kingman v. Waugh,* 40 S. W. Rep. [Mo.],

884; *Williams v. Colwell,* 43 N. Y. Supp., 720; *Linn v. Allen,* 44 N. E. Rep. [Ind.], 646. In the last case cited, the *Daily Reporter* was the newspaper in question. It had a circulation of three thousand copies, among judges, lawyers, bankers, collection and commercial agencies, real estate dealers, merchants and other professional and business men, and was kept on sale at public news-stands. Although devoted primarily to legal matters, it contained the proceedings of the board of public works and a complete record of deeds filed in the recorder's office, as well as of mortgages, mechanics' and other liens, assessments, and sheriff's sales of real estate, together with the quotations of local securities, railroad time tables, and one or more columns devoted to the general news of the day.

Measured by these standards, the scope of the Omaha *Mercury* (Exhibit A) is altogether too narrow to be classed as a newspaper.

*George E. Pritchett, contra.*

HOLCOMB, J.

In proceedings of foreclosure of a real estate mortgage in the district court of Douglas county, on an application for confirmation of a sale of real estate made in said action, the defendants, appellants, objected thereto, and moved to set aside the sale, on the ground that notice of sale by publication in the Omaha *Mercury* was insufficient, alleging that that publication was not a newspaper as provided by section 497 of the Code of Civil Procedure. The objection was overruled, and by appeal the case is brought to this court. The section referred to provides as follows: "Lands and tenements, taken in execution, shall not be sold until the officer cause public notice of the time and place of sale to be given, for at least thirty days before the day of sale, by advertisement in some newspaper printed in the county, or, in case no newspaper be printed in the county, in some newspaper in general circulation therein. * * * All sales made without such

advertisement shall be set aside, on motion, by the court to which the execution is returnable."

The point in issue is whether the Omaha *Mercury* is a newspaper within the meaning of the section quoted. In the affidavit in support of the motion to set aside, it is said: "That said Omaha *Mercury* published weekly at Omaha, Nebraska, is a class paper devoted specially to the interests of the lawyers of Douglas county, Nebraska. That said Omaha *Mercury* is a paper which is confined to the particular trade, calling or business interest of the lawyers of Omaha, has a limited circulation and is not a newspaper as by law provided and required." A copy of one issue of the paper is made an exhibit, which is said to be "a fair sample of said publication." The proprietor of the publication challenged makes affidavit that "he is the owner and proprietor of the Omaha *Mercury*, a newspaper printed and circulated every Friday in the city of Omaha, Douglas county, Nebraska, and elsewhere. That this affiant says that it is not true that said Omaha *Mercury* is a class paper, or that it is confined to the interests of the lawyers of Omaha, or Douglas county. That said Omaha *Mercury*, then known as the Omaha *Watchman*, was established in the year 1870, and has been published weekly ever since said date. That said paper contains each week news of a general character, such as is to be found in the average weekly paper published in Nebraska; that of late years it has made a specialty of the news of the courts, and of legal matters in general, but that it is not true that it is devoted to the legal profession in any sense which would render it a 'class publication.' That said paper has a large and valuable subscription list, and that its said subscribers are of all classes and professions; that said newspaper has a wide circulation in Douglas county and the state of Nebraska, but that it is also taken and paid for by various classes of people in a great number of the states of the Union. That for the past twenty years it has been the custom of lawyers and others, to publish legal notices in said paper—

so much so that the people of Douglas county and the
state of Nebraska, and throughout the entire United
States, look first in its columns for legal advertisements
in which they are interested; that it has published in the
past, and still continues to publish, the greater percent-
age of legal notices in Douglas county, including orders
required to be published by the district and circuit court
of the United States, and of the district and county courts
of Douglas county, and that said paper is commonly
designated by the judges of the aforesaid courts as the
paper in which to publish the various orders required to
be published by said courts."

Webster's Dictionary defines a newspaper to be "A
sheet of paper printed and distributed, at short intervals,
for conveying intelligence of passing events; a public
print that circulates news, advertisements, proceedings
of legislative bodies, public documents and the like.
Burrill's Law Dictionary gives this definition: "A
paper or publication conveying news or intelligence. A
printed publication, issued in numbers at stated in-
tervals, conveying intelligence of passing exents. The
term 'newspaper' is popularly applied only to such
publications as are issued in a single sheet, and at short
intervals, as daily or weekly." It is difficult, if not im-
possible, to determine with clearness and exactness where
the line of demarcation should be drawn between a
newspaper in a legal and common acceptation of the
term and the numerous publications devoted to some
special purpose, which circulate only among a cer-
tain class of the people, and which are not within the
purview of statutes requiring publication of legal notices
in some newspaper. The daily and weekly newspapers
common to all parts of the country, of general circulation
among the people, without regard to class, vocation or
calling, devoted to the gathering and dissemination of
news of current events of interest to all, and usually es-
pousing and advocating principles of some political party
with persistency, if not at all times with consistency, are,

without doubt, newspapers within the meaning of the statute. On the contrary, many publications, such as literary, scientific, religious, medical and legal journals, are obviously for but one class of the people—and that class always but a small part of the entire public—are not newspapers within the legal and ordinary meaning of the word, and it would be manifestly unjust, as well as against the letter and spirit of the law, to recognize such publications as proper for the advertisement of legal notices; the object in all cases being to give wide and general publicity regarding the subject of which notice is required to be published. The paper in question partakes, in a degree, of the characteristics of each of the two classes mentioned. If, however, it has the distinguishing features required to make it a newspaper as ordinarily defined, the fact that it also makes a specialty of some particular class of business, and conveys intelligence of particular interest to those engaged in such business, will not thereby deprive it of its general classification as a newspaper within the meaning of the statute.

In *Lynch v. Durfee,* 59 N. W. Rep. [Mich.], 409, it is held: "A weekly paper, containing matters of general interest, and having a general circulation among professional and business men, is a newspaper within the meaning of How. St., sec. 5801, providing for the publication in a newspaper of certain notices in probate proceedings, though it is primarily devoted to disseminating matters of interest to the legal profession." In the opinion it is said: "But a newspaper, even in the days when these statutes were enacted, meant, what it means to-day, a sheet of paper printed and distributed at short intervals for conveying intelligence of passing events; a public print that circulates news, advertisements, proceedings of legislative bodies, public documents, and the like."

In *Linn v. Allen,* 44 N. E. Rep. [Ind.], 646, it is held that a periodical, ephemeral in form, issued daily except Sundays, devoted to the general dissemination of legal news, and containing other matters of general interest to the public, is such a paper.

In the case of *Railton v. Lander*, 18 N. E. Rep. [Ill.], 555, the evidence in the case showed that the Chicago *Daily Law Bulletin* was a paper published in Chicago, having a general circulation throughout the city of Chicago and the state of Illinois, among judges, lawyers and real estate brokers, merchants and business men generally. Its contents consisted, for the most part, of legal matters, but it contained advertisements not confined to any one calling, or trade, as well as news and information of a general secular character.. The paper in question was held to be a secular newspaper of general circulation within the meaning of the statute.

To the same effect is *Williams v. Colwell*, 43 N. Y. Supp., 720, 724, decided in 1896, where the writer of the opinion has collated the more important cases up to that date upon the subject. Says the writer of the opinion, after reviewing the authorities: "The facts stated in the affidavit and stipulation read on the motion bring this case within the cases cited sustaining publications of legal notices. While the principal news published in the *Daily Mercan-.tile Review* is of especial value to attorneys, bankers, brokers, commission merchants, and those engaged in the real estate business, yet it is shown by the affidavit and stipulation that several columns are devoted to general advertising, and to the publication of local and other news of general interest, and that it has a general circulation."

The paper in question has been established for a number of years, and is published weekly. As stated in an affidavit in the case, "Of late years it has made a specialty of the news of the courts, and of legal matters in general." It appears to have, according to the affidavit, a large and valuable subscription list, and to circulate among various classes of people throughout the county and state, as well as the United States. It has been recognized as a legal newspaper by the probate court of the county, the district court and the federal courts. Its printed matter consists principally of legal notices, information regarding courts, and a legal directory of the

Douglas county bar. Some advertising of a miscellaneous character, literature of a general kind, commonly designated plate matter, and what purports to be information of the actions of congress, two addresses by lawyers, and a limited amount of general news of current events, are found in its columns, although we are constrained to say that there is a dearth of the latter, as shown by the exhibit, which has rendered it more difficult to reach a correct conclusion in this case. The principal distinguishing feature of a newspaper, in contemplation of the statute, in our opinion, is that it be a publication, appearing at regular or almost regular intervals, at short periods of time, as daily or weekly, usually in sheet form, and containing news; that is, reports of recent occurrences, political, social, moral, religious, and items of a varied character, both local and foreign, intended for the information of the general reader. It is the one quality of "news," which gives it its general interest and secures for it a general circulation among people of different classes and callings, whom the statute seeks to reach by the requirement of notice by publication in a newspaper. It should be noted, too, that, in a degree, the presence of advertisements not appealing to any particular class, trade or profession, constitutes a factor tending to bring a publication, possessing the qualifications heretofore mentioned, within the designation of a newspaper of general circulation. While some effort has been made by the legislature to define a newspaper, and limit the publication of legal notices to papers which are most likely to have a *bona fide* circulation among the general public where published, so far nothing of a permanent nature has been accomplished. In the absence of such legislation, we are disposed to the opinion, under the evidence presented, that the Omaha *Mercury* is a newspaper within the meaning of the statute, and as defined by the authorities herein adverted to.

It follows that the ruling complained of is correct, and is

AFFIRMED.