Hall, Respondent, vs. City of Milwaukee, imp., Appellant.

*September 26—October 21, 1902.*

*Newspapers: Definition: Publication of ordinances, etc.: Official city paper.*

The term "newspaper," as used in sec. 9, ch. 3, of the Milwaukee city charter (ch. 66, Laws of 1891),—requiring the council to award the contract for publishing ordinances, notices, etc., to the daily newspaper offering to do the same at the lowest price for a year, and to designate such newspaper as the official newspaper of the city—is *held* to include the "Daily Reporter," a paper twelve by eighteen inches, published in a morning edition of eight pages and an afternoon edition of four pages, devoted primarily and mainly to reports of the markets, courts, and conveyancing and building news, but containing also the weather report and forecast, some advertisements, and, in "plate matter," some information and news concerning matters of general interest, although such paper reaches but a few hundred out of the hundreds of thousands of population of the city.

Appeal from a judgment of the superior court of Milwaukee county: James O'Neill, Judge. *Affirmed.*

The charter of Milwaukee provides (ch. 3, sec. 9) that preceding the first Tuesday in April of each year the council shall require the city clerk to advertise for proposals to do the advertising for the city of all ordinances, notices, etc., required to be published in a newspaper, gives direction for filing the bids, and provides: "No bids . . . shall be considered by said clerk except from a daily newspaper

which has been published in said city at least two years con-secutively next before the date of the bid." After opening the bids, the clerk is required to tabulate them, and report to the city council, which body is required by resolution to designate and award such advertising to the newspaper which shall offer to do such advertising "at the lowest price for the year then ensuing," and is also required to designate such newspaper so receiving the contract as the proper official newspaper of said city. Laws of 1891, ch. 66. In ostensi-ble compliance with this section, the city clerk, in March, 1902, advertised for bids, and, after certain bids had been refused, resolution accepting one thereof had been vetoed by the mayor, and all of such bids rejected as too high, fur-ther bids were received, among which, material to this case, were those of the Reporter Publishing Company at eight and seven cents for first and subsequent insertions, respectively, and of the News Publishing Company at fourteen and six-teen cents for first and subsequent publications. Thereupon the council, by resolution, awarded the contract to the News Publishing Company, and designated the Milwaukee Daily News as the official English newspaper of the city. Such resolution, being vetoed, was passed over the mayor's veto, and a contract in accordance therewith in form executed.

The plaintiff, as a taxpayer, brought suit to adjudge such contract void and enjoin the city from incurring any liabil-ity thereunder; asserting its invalidity on the ground that the News Company had not bid the lowest price for the work, but that the Reporter Publishing Company had bid lower. The defense presented is to the effect that the paper pub-lished by the latter is not a newspaper within the meaning of the charter requirement.

The court found as a fact "that the 'Daily Reporter' is a daily newspaper, and ever since the 1st day of January, 1899, has been, and now is, printed daily in English, and published in the city of Milwaukee." It is also found that

the Reporter is an eight-page paper, eighteen by twelve inches, published in two editions, one in the morning and one in the afternoon, the morning edition containing the eight pages and the afternoon only four; that the morning edition has a daily and *bona fide* paid circulation of 375 copies per day in the city and county of Milwaukee; that the afternoon edition has a circulation of 578 copies, out of which 210 are daily sent to individual paying subscribers in various parts of Milwaukee and other counties of the state and outside the state, and 368 copies are daily sent to parties throughout the United States upon subscriptions made by local commissionmen and dealers in the city of Milwaukee who desire to have said paper sent to customers and other persons in the country with whom they deal; that the afternoon edition, among other matters, contains daily news of the daily markets in grain, as shown by the transactions on the boards of trade of Milwaukee, Chicago, New York, and other cities in the United States and abroad, the movements of grain, financial quotations from the chief money exchanges, a review of the live stock and other markets, a list of judgments entered in the courts of Milwaukee county and of satisfactions thereof, a statement of mechanic's liens filed or released, and of all conveyances filed with the register of deeds of Milwaukee county, chattel mortgages filed with the city clerk of the city of Milwaukee and releases thereof, time-tables of the railroads in Milwaukee, quotations showing the prices upon the various produce markets in the city of Milwaukee, notices ordered to be published by Milwaukee courts, sheriffs' sales, and general advertisements of merchants and business men in the city of Milwaukee, besides items of general interest and news to the public at large; that the morning edition contains, in addition, news items of the daily happenings of all the courts in Milwaukee county, a list of causes upon the daily calendars in said

courts for the ensuing day, a statement of the doings for the day in bankruptcy court, and also all the matter contained in the evening edition of the night before, the weather report and forecast, a statement of what buildings are being planned for erection, with the names of architects and general character and description of buildings which are being erected, and advertisements attractive to the general public, and also contains, in varying quantities, sometimes more than a column, so-called "plate matter," being information and news concerning matters of general interest to the public at large, and also contains matters and items of general news and information beyond those above referred to, many legal notices (of which some 3,000 have been published since the commencement of said paper), and that there has been published in said paper the notice of tax sale for delinquent taxes in the year 1901; also that the morning edition of the Daily Reporter circulates generally among all classes of professional and business men in the city and county of Milwaukee. Such finding is in some respects assailed, as will appear more fully in the opinion.

The court held that the Daily Reporter is a newspaper within the designation of the charter, hence that the bid of the News Company was not the lowest, and accordingly adjudged void the contract with the latter, and perpetually enjoined the city of Milwaukee and its officers from creating any liability with reference to publication of any ordinances, etc., in the Milwaukee Daily News, and from delivering any such ordinances to the News Publishing Company for publication, and from paying to it any money under said contract, or issuing city orders or warrants for any work done thereunder; from which judgment the defendant appeals.

*Carl Runge,* city attorney, and *Thos. H. Dorr,* assistant city attorney, for the appellant.

*Charles F. Hunter,* for the respondent.

DODGE, J.   While the findings of fact, of which the substance is given in the foregoing statement, are perhaps in no respect wholly unsupported by evidence, they are at least capable of conveying a somewhat exaggerated conception both of the information and news of interest to the general public contained in the Daily Reporter, and the extent to which it circulates generally among professional and business men. We need not, however, devote space to the detail of such facts. The general result is the same, namely, that the Reporter addresses itself to special fields of circulation and of news, and is, of course, widely different, both in contents and circulation, from the great daily newspapers, as they are known to the general public.   It is, in brief, what its name indicates, a law and business reporter, reaching but a few hundred out of the hundreds of thousands of population of Milwaukee, and yet it cannot be said to fail of compliance with most of the recognized legal definitions of a "newspaper," among which are: Rap. & L. Law Dict.: "A periodical publication containing intelligence of passing events."   Black, Law Dict.: "A publication in numbers, consisting commonly of single sheets, and published at short and stated intervals, conveying intelligence of passing events."   Am. Ency. Dict.: "A printed paper published at intervals, . . . containing intelligence of past, current, or coming events, and, at the option of the conductors, presenting also expressions of opinion by editorial and other contributors, and business announcements and advertising."   21 Am. & Eng. Ency. of Law (2d ed.) 533: "A publication issued at regular stated intervals, containing, among other things, the current news, or the news of the day."   Other definitions, but to substantially the same effect, will be found in the opinions of courts hereafter to be cited.

Doubtless the term "newspaper," used in different surroundings, may have different meanings, and, could we approach the question as *res nova,* we confess to be strongly in-

clined to the view that the object of the Milwaukee charter requiring publications of its ordinances, notices, etc., was to obtain so much of publicity as to require a medium of publication broader and more comprehensive than the one now before us; but we discover in that legislation another purpose, much more carefully guarded, and which we cannot but believe to have been a dominant one, namely, that of withholding from the council of Milwaukee anything of discretion or favoritism in the selection of the medium in which such publications should be made. The legislature might, as it did in providing for the publication of summons, require the newspaper to be selected in discretion as that most likely to give information. It might have placed a minimum limit upon the *quanlum* of circulation, or required selection of the paper offering lowest price per 1,000 circulated. It might, indeed, have drawn a line as to the contents of the paper which would have excluded merely trade or professional journals. But it did none of these things. It required that the publications should be had merely in that newspaper which would make the lowest price. Hence, in the nature of things, the dominant·purpose could not have been to secure the widest publication; for, necessarily, the price must be largely affected by the number of papers circulated. It costs more to supply the paper for, and to print and distribute, 30,000 newspapers, than it does 5,000; also the space is salable to advertisers for more. So no one of business sense could expect that, other things being equal, a paper with the former circulation would offer to publish these ordinances and notices as cheaply as one of the latter. Hence we derive the inference, above stated, that the purpose to accomplish the widest publicity was subordinate to that of restraining the council from discretion or favoritism, and requiring it to adopt the medium according to the price offered, so long as that medium fell within the definition of the word "newspaper," even without the qualification imposed in many stat-

utes that it should be of general circulation; and that this latter purpose so dominated in the mind of the legislature as to require the selection of even such a sheet as the Reporter, if it is within the recognized meaning of the word "newspaper." If such was the legislative intent, it is not for the court to weigh or consider the wisdom or otherwise of the legislation. For that we are not responsible. If it is unwise, the legislature had a right to make it so, and has at all times a right to change it.

We cannot, however, consider the significance of the word "newspaper," even in this legislation, as an entirely new and original question; for, while this court is not definitely committed on the subject, the word has so many times received construction by courts of other states under circumstances so closely approximating those now present that we cannot properly refuse consideration to the force of such decisions, which, upon examination, prove to be overwhelmingly in favor of the inclusion of such a paper as this Reporter within the legal term "newspaper." Those at least tending in that direction are the following: *Lynch v. Durfee,* 101 Mich. 171, 59 N. W. 409; *Lynn v. Allen,* 145 Ind. 584, 44 N. E. 646; *Kerr v. Hitt,* 75 Ill. 51; *Hernandez v. Drake,* 81 Ill. 34; *Maass v. Hess,* 140 Ill. 576, 29 N. E. 887; *Railton v. Laudor,* 126 Ill. 219, 18 N. E. 555; *Pentzel v. Squire,* 161 Ill. 346, 43 N. E. 1064; *Kellogg v. Carrico,* 47 Mo. 157; *Benkendorf v. Vincenz,* 52 Mo. 441; *Kingman v. Waugh,* 139 Mo. 360, 40 S. W. 884; *Hull v. King,* 38 Minn. 349, 37 N. W. 792; *Norton v. Duluth,* 54 Minn. 281, 56 N. W. 80; *Hanscom v. Meyer,* 60 Neb. 68, 82 N. W. 114; *Turney v. Blomstrom,* 62 Neb. 616, 87 N. W. 339; *Hurt v. Cooper,* 63 Tex. 362, 367; *Meyer v. Opperman,* 76 Tex. 105, 109, 13 S. W. 174; *Williams v. Colwell* (Sup.) 43 N. Y. Supp. 720; *Bigalke v. Bigalke,* 19 Ohio Cir. Ct. Rep. 331; 4 Op. Atty. Gen. U. S. p. 10.

The only decisions tending to exclude special or class jour-

nals from designation of newspapers for purpose of statutory publication are *Beecher v. Stephens,* 25 Minn. 146; *In re Charter Application,* 11 Phila. 200; *Crowell v. Parker,* 22 R. I. 51, 46 Atl. 35. *Beecher v. Stephens* held the Northwestern Reporter not a newspaper. That publication is so well known to the profession that we hardly need to suggest its distinction from such papers as this before us. The Northwestern does not purport to publish news, but the opinions of various courts. It is a compilation of decisions of courts. In *In re Charter Application* the publication was required by law to be in "two newspapers of general circulation," and it was held that the Legal Intelligencer, mainly confined to the legal profession, did not satisfy that requirement. *Crowell v. Parker* was a publication of notice of sale under a power contained in a mortgage requiring publication in a public newspaper. The court held that the Real Estate and Rental Guide would not satisfy that contract requirement, mainly for the reason that the publication clause in this mortgage had been in use for many years, and had always been understood and construed by practice to require publication in the ordinary general newspaper, and that the instance before the court was the first one known of an attempt to publish in a trade or special journal. The court, therefore, considered many of the decisions hereinabove cited as not applicable.

With the exception of the three cases last referred to, the decisions above cited all tend to the inclusion of special trade, commercial, religious, or scientific journals within the designation "newspaper," where used in statutes regulating publication of either municipal or legal notices. The courts of Illinois, Indiana, Michigan, Missouri, Nebraska, New York, and Ohio have so decided in favor of legal publications addressing themselves especially to lawyers, and devoting their columns primarily and mainly to the publication of events transpiring in courts, on markets, or amongst convey-

ancers. Many, if not most, of the legal journals considered bore very close resemblance to that now before us, the distinctions being wholly in detail or in degree, and in no respect in principle. Other publications have also been included; such, for example, as one confined principally to news of corporations, known as the National Corporation Reporter, a daily mercantile reporter, religious weeklies, and others special both in their circulation and matter. From this overwhelming array of judicial opinion we cannot avoid the conclusion that a publication is deemed a newspaper in the legal sense although it does not attempt to publish all the news. Indeed, it may probably be said that hardly any, even of our broadest daily journals, do publish all the events transpiring. Matters will be found in one which are not in another; sometimes by accident, more often by reason of the system or policy of the journal itself. The difference is only in degree between such papers and those which, of definite policy, confine themselves mainly to those events which are of special interest to a limited class, thus bringing that particular phase of the news more conveniently before the class so interested in it. When this field is once entered, the difficulty of drawing any scientific line is obvious, and we cannot believe that the legislature intended to pass over to the common council discretion to say that, because one paper did not publish fully certain complexions of political news, or of sectarian and religious news, or adequate description of sporting events, or otherwise limited its field of news, it should be excluded from the rank of competing newspapers. On the contrary, we are convinced that the charter provision in question can only be enforced by giving to the word under discussion therein the meaning which has been given to it by courts all over the country, and thus holding that the Daily Reporter is a newspaper within its terms; that, its bid being the lowest, the council had no discretion or power to accept any other bid; and that the attempted contract set forth in

the complaint in this action, founded upon such other and higher bid, was prohibited, so that the city should be enjoined, at the suit of a taxpayer, from subjecting the city treasury to any liability thereon. That is the substance and effect of the judgment appealed from, which, therefore, should not be disturbed.

*By the Court.*—Judgment affirmed.