THE STATE OF FLORIDA ON THE RELATION OF MELVINA B. YAEGAR, JOINED BY HER HUSBAND, JOSEPH YAEGAR, *Relators,* v. A. J. ROSE, AS JUDGE OF THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA CIRCUIT COURT IN AND FOR DADE COUNTY, *Respondent.*

## En Banc.

## Opinion Filed May 10, 1927.

### Petition for Rehearing Denied October 25, 1927.

1. One of the fundamental canons of construction is that legislative intent will be gleaned from the language of the statute, the subject regulated, the purpose to be accomplished and the means applied for accomplishing the purpose.

2. Our constructive service statute (Sec. 3111, Revised General Statutes of Florida, 1920, as amended by Chapter 10102, Regular Session of 1925, as amended by Senate Bill No. 86, Extraordinary Session, 1925, Laws of Florida), is designed to give non-resident, unknown, absent or concealed defendants an opportunity to come into court and make their defense to the bill or petition exhibited against them within the time specified in the order to appear.

3. Constructive service statutes involving property rights must be construed with reference to due process of law.

4. The term newspaper as used in our constructive service statute must have refernce to some publication appearing at daily or weekly intervals reporting the news or happenings of local or foreign interest, or both, such as social, religious, political, moral, business, professional, editorial and other kindred subjects intended for the information of the general reading public.

5. It would be contrary to the letter and spirit of the law to recognize as newspapers those publications designed for the benefit of any one class of the whole population, and that

class a negligible percentage of the entire public, such as legal and medical journals or literary and scientific publications.

6. If it is made to appear that any periodical published for the benefit of a class or profession in addition thereto reports daily or weekly the news of a local or foreign interest, and in other respects meets the requirements of a newspaper as defined therein it would come within the rule.

7. Any publication with a subscription of three hundred and fifty or less, in a county of 150,000 or more population and devoted primarily to reporting the proceedings and transactions of the courts, reporting little or no news in which the general public would be interested, would in our judgment, not be a newspaper in contemplation of our constructive service statute which must be construed in this connection with reference to the due process clause of the State and Federal Constitution.

A case of original jurisdiction.

*Robt. J. Boone, Mitchell D. Price* and *W. J. Oven,* for Relators;

*Botts, Davis, Davis & Field,* for Respondent.

TERRELL, J.—On petition of relators, alternative writ of mandamus was granted by this Court directed to Hon. A. J. Rose as Judge of the Eleventh Judicial Circuit of Florida, commanding him to recognize The Daily Record of Miami, Florida, as a newspaper for the publication of legal notices, and to take jurisdiction of a certain cause pending in the said Eleventh Judicial Circuit wherein relators are complainants and R. P. Fulkerson is defendant, or to show cause, etc.

There was a return to the alternative writ and the cause now comes on to be heard on relators' demurrer to said

return. The sole question raised by the demurrer is whether or not The Daily Record of Miami, Florida, is a newspaper in the contemplation of the statutes of this State relating to constructive service on non-resident, unknown, absent or concealed defendants.

Our statute providing for constructive service (Section 3111, Revised General Statutes of Florida, 1920, as amended by Chapter 10102, Acts of 1925), and cognate statutes for similar purposes (Sections 3113, 3114, 2835, 2942, 3763, Revised General Statutes of Florida; and Section 3786, Revised General Statutes of Florida, 1920, as amended by Chapter 8473, Acts of 1921, Laws of Florida), merely provide in substance that the order or notice to appear shall be published at stated intervals in some newspaper published in the county where the court is located, or where the sale takes place.

We are therefore in the outset confronted with the query: What is a newspaper as contemplated by the statutes heretofore enumerated relating to constructive service, especially Section 3111, Revised General Statutes of Florida? One of the fundamental canons of construction is that legislative intent will be gleaned from the language of the statute, the subject regulated, the purpose to be accomplished and the means applied for accomplishing the purpose. Tylee v. Hyde, 60 Fla. 389, 52 South. Rep. 968; State *ex rel.* Holloway v. Sheats, 78 Fla. 583, 83 South. Rep. 508.

Our constructive service statute (Section 3111, Revised General Statutes of Florida, 1920, as amendel by Chapter 10102, Regular Session of 1925, as amended by Senate Bill No. 86, Extraordinary Session, 1925, Laws of Florida), is designed to give non-resident, unknown, absent or concealed defendants an opportunity to come into court and make their defense to the bill or petition exhibited against them within the time specified in the order to appear. It is

accomplished by publishing the order to appear without delay in such newspaper as may be designated therein, or by posting copies of the notices as per terms of the order as prescribed by the statute. We think that since such statutes usually involve property rights they must be construed with reference to due process.

Construing the term newspaper as used in our constructive service statute in the light of the foregoing facts, we think it must have reference to some publication appearing at daily or weekly intervals reporting the news or happenings of local or foreign interests, or both, such as "social, religious, political, moral, business, professional, editorial and other kindred subjects intended for the information of the general reading public. It may become necessary in the course of litigation to reach members of any profession, trade, craft or calling by constructive service, hence the reason for publication in a newspaper of general circulation read and subscribed to by the public generally. Publication in any newspaper falling short of these requirements would not comply with the statute nor meet the requirement of due process of law. Tylee v. Hyde, 60 Fla. 389, 52 South. Rep. 968; Hanscom v. Meyer, 60 Neb. 68, 82 N. W. Rep. 114; Beecher v. Stephens, 25 Minn. 146; Lynch v. Durfee, 101 Mich. 171, 59 N. W. Rep. 409; Williams v. Colwell, 14 Appl. Div. 26, 43 N. Y. Supp. 720, 1167.

It would not only be unjust, but it would be contrary to the letter and spirit of the law to recognize as newspapers those publications designed for the benefit of any one class of the whole population, and that class a negligible percentage of the entire public, such as legal and medical journals or literary and scientific publications. Hanscom v. Meyer, *supra*. This objection, however, could be removed if it is made to appear that any periodical published for the benefit of a class or profession in addition thereto reports

daily or weekly the news of a local or foreign interest, and in other respects meets the requirements of a newspaper as defined herein. Hanscom v. Meyer, *supra;* Railton v. Lauder, 126 Ill. 219, 18 N. E. Rep. 555; Maass v. Hess, 140 Ill. 576, 29 N. E. Rep. 887; Pentzel v. Squire, 161 Ill. 346, 43 N. E. Rep. 1064; Lynch v. Durfee, 101 Mich. 171, 59 N. W. Rep. 409.

Now in the light of these specifications let us assess the value of the facts as presented by the pleadings in the case at bar. It is alleged in the alternative writ that The Daily Record is a newspaper of general circulation, that it is more than seven months old, that it is published at Miami, Florida, every day except Sunday and legal holidays, and that while its contents is devoted largely to matters of interest to the legal profession, it is a journal of general circulation with more than five hundred subscribers in the United States, most of whom are in Dade County, and that it embraces news items of interest to the public generally, such as personal items, notices of passing events, and general trade news. It is also alleged that The Daily Record has among its subscribers, banks, lawyers, advertising companies, burial parks, bond and mortgage companies, real estate adjusters, builders, insurance dealers, jewelers, publishers, developers, real estate brokers, criminal bonding companies, property management, mercantile agencies, credit agencies, abstract companies, judges of the courts, court reporters, title searchers, municipal bonding companies, police department, clerks of courts, detective agencies, buyers of bankrupt stocks, farmers, tent and awning companies, advertising companies, department stores, restaurants, immigration officers, sheriffs, undertakers, general merchandise stores and others.

The return to the alternative writ admits that The Daily Record is more than seven months old and is published at

Miami, Florida, every day except Sunday and legal holi-
days, but denies that it is a newspper of general circula-
tion, containing matters of interest to the public generally
and that it has more than five hundred subscribers.   The
return further alleges that The Daily Record has a subscrip-
tion of less than three hundred and fifty, that it is devoted
to the particular purpose of disseminating information with
reference to the transactions of the courts of Dade County,
Florida, property advertisements, directories of the courts,
current papers filed in the court house, and that the said
The Daily Record is published obviously for one class of
people, which class comprises a small part of the entire
population.

Several copies of The Daily Record are made a part of
the record here.   Inspection of these copies shows it to be
a well-prepared five-column folio, twelve by fifteen and
one-half inches.   About one-half of three columns on the
front page is devoted to "News of the Day."   All other
space is devoted to the proceedings and transactions of the
various courts of Dade County, including a few advertise-
ments.   A portion of the space given to "News of the Day"
is occupied by subject-matter pertaining to the courts, and
very little if any of it can be said to be of interest to the
general public.

To the return of respondent, relators filed their demurrer.
The demurrer admits the allegations of fact in the return
and all fair inference therefrom.   State *ex rel.* Railroad
Com'rs. v. Louisville & N. R. Co., 62 Fla. 315, 57 South. Rep.
175; State *ex rel.* Railroad Com'rs. v. Florida East Coast
R. Co., 64 Fla. 112, 59 South. Rep. 385; State *ex rel.* Rail-
road Com'rs. v. Atlantic Coast Line R. Co., 67 Fla. 441, 63
South. Rep. 729; Merchants Broom Co. v. Butler, 70 Fla.
397, 70 South. Rep. 383.

This Court takes judicial knowledge of the population of

Dade County (over 150,000). The Daily Record with a subscription of three hundred and fifty or less, in a county of the population of Dade County, and devoted primarily to reporting the proceedings and transactions of the courts, reporting little or no news in which the general public would be interested, would in our judgment, not be a newspaper in contemplation of our constructive service statute which must be construed in this connection with the due process clause of the State and Federal Constitutions. Olsen v. Bibb Co., 117 Minn. 214, 135 N. W. Rep. 385, Ann. Cas. 1913D 877; Times Printing Co. v. Star Publishing Co., 51 Wash. 667, 99 Pac. Rep. 1040, 16 Ann. Cas. 414, and Note p. 417; 20 R. C. L. 201.

The demurrer to the return to the alternative writ will therefore be, and is hereby overruled.

ELLIS, C. J., AND WHITFIELD, STRUM AND BUFORD, J. J., concur.

BROWN, J., disqualified.