FARNSWORTH LOAN & REALTY COMPANY v. COMMONWEALTH TITLE INSURANCE & TRUST COMPANY.[1]

August 1, 1902.

Nos. 12,990, 12,991—(151,152).

**Foreclosure of Mortgage—Separate Liens—Costs.**

Several parcels of real property, upon each of which was apportioned a specific lien as security for the payment of a designated sum, were embraced in one mortgage, subject to the condition that each lien should be treated separately. *Held*, that the owner of such mortgage might upon default enforce his rights through foreclosure of each distinct tract by advertisement under power of sale, and in such case would be entitled to the same costs, disbursements, and attorney's fees, as if each were covered by a separate mortgage.

**Method of Foreclosure—Election of Mortgagee.**

Where several tracts or parcels of land, upon each of which a distinct lien is applied, are embraced in a single mortgage instrument, as in this case, it is optional with the owner of the security, upon default, to enforce his rights in one proceeding for each separate lien, or to include all the liens covered by one mortgage in one foreclosure by advertisement, although if he pursues the latter course he may have costs and disbursements for but one foreclosure.

Action in the district court for Hennepin county to recover the amount of alleged excessive attorney's fees and costs charged and retained by defendant on foreclosure of certain mortgages upon land owned by plaintiff at the time of the foreclosure sales. The case was tried before Brooks, J., who found in favor of plaintiff for the sum of $266.19. From a judgment entered pursuant to the findings, plaintiff and defendant severally appealed. Reversed, and judgment ordered for defendant.

[1] Reported in 91 N. W. 469.

*Smith & Smith,* for plaintiff.

*Davis, Kellogg & Severance,* for defendant.

LOVELY, J.

In the year 1889 four mortgages were executed to the Northwestern Guaranty Loan Company as security for loans upon city lots in Minneapolis, given by the mortgagors to secure payment for loans evidenced by promissory notes separately apportioned and applied to each lot therein, respectively. The mortgages contained powers of sale, and the notes secured thereby referred to each lot, with the amount indicated distinctively by marginal memoranda thereon. It was provided in each mortgage that it should be

"Regarded and is hereby made a separate and distinct instrument and mortgage for each and every of the lots and parcels of land hereinbefore described, and that a default in the payment of either of the several sums mentioned in said apportionment and tabular arrangement, or interest or taxes, as herein set forth, shall render operative the power of sale herein contained only so far as extends to the lot or parcel of land whereon such default shall have occurred, which may be ascertained by reference to the marginal memoranda on said several notes as hereinbefore provided, and may be foreclosed whenever and as often as default shall occur as to either of said lots, upon such lots, and without affecting the remainder of said lands in any manner."

These mortgages and notes were afterwards assigned to defendant. Plaintiff before the commencement of this action became the owner of the mortgaged property by purchase, and succeeded thereby to the rights of the mortgagors therein. Default having been made in the payment of the loans secured, the mortgages were foreclosed by advertisement in 1894 and 1895 for the several amounts due, with interest and delinquent taxes. Instead of publishing one foreclosure notice for each mortgage, every separate lot was treated as a distinct and substantive source of security for the amount applied thereto, and separate foreclosure proceedings for each lot were instituted by advertisement, giving proper notices in form, which were published and served, in which costs and disbursements were claimed as if each were a separate mortgage. Upon the foreclosure sale each lot was likewise treated as a separate mortgage, distinct claims were made for the sum due

on every note, with costs, attorney's fees, interest, taxes, and separate certificates were issued by the sheriff to the defendant as purchaser. No redemption was made, and, so far as this review is concerned, defendant became the owner of the property. Six years afterwards this suit was brought, setting forth in the complaint four causes of action, and, upon the claim that defendant should have foreclosed the several lots embraced in each mortgage in one foreclosure, that he was not entitled to treat each lot as covered by a separate mortgage, or have attorney's fees or any costs or disbursements beyond what would have been incurred, if there had been but one foreclosure proceeding for each mortgage, instead of one for each lot.

The cause was tried to the court upon a stipulation conceding the facts above stated. Findings were made in favor of plaintiff, to the effect that there had been excessive overcharges by reason of an inequitable application of costs to the liens in the course pursued by defendant. Judgment was entered for plaintiff for a specific amount, from which both parties appeal,—the plaintiff upon the claim that it was entitled to a judgment for the full amount demanded in the complaint; defendant upon the ground that plaintiff was not entitled to recover at all, for the reason that the foreclosure procedure adopted was strictly legal. So that the question to be determined upon this review is, in short, whether in the several foreclosure proceedings set forth in the four causes of action in the complaint excessive overcharges were made by defendant which it should now repay to plaintiff as the assignee of the mortgagor's interest in the property.

While the contentions of the respective parties have been presented at considerable length, we are clearly of the opinion that the questions before us are not new, but that it has already been held by this court that under a contract in a mortgage for the apportionment and application of distinct liens upon separate parcels of real property, to secure separate and distinct sums of money on each parcel, when consolidated in one instrument, a default in the payment of one lien does not operate as a default upon any other contained therein, but that the owner of the mortgage may treat each as a distinct lien and enforce the same separately,

when the terms of the mortgage itself, as here, provide for that course, and the owner may also, if he chooses, in such enforcement of his foreclosure rights by advertisement publish and serve separate foreclosure notices for each lien, and have the sale thereof conducted in the same manner as if, instead of all the parcels being embraced in one instrument, they were contained in as many mortgages as there are distinct liens to be enforced. Hull v. King, 38 Minn. 349, 37 N. W. 792; Mason v. Goodnow, 41 Minn. 9, 42 N. W. 482. It follows necessarily that if the owner of the mortgage may legally treat each separate lien as a distinct mortgage, and foreclose it as such, although included in the same instrument, he would be entitled to the costs, disbursements, and attorney's fees authorized by law for the foreclosure of each separate lien.

It is urged that we have held a different view in the case of Eliason v. Sidle, 61 Minn. 285, 63 N. W. 730, and in the later case of Truesdale v. Sidle, 65 Minn. 315, 67 N. W. 1004; but an intelligent examination of those cases will show that the conditions attendant upon the foreclosures in both are clearly distinguishable from the course of procedure adopted by defendant. In those cases the owner of the mortgages chose to adopt a different procedure from that pursued here, and foreclosed the several liens included in one mortgage in one single foreclosure proceeding. It was held in those cases that, having chosen this course, the owner of the mortgage could not have pay for several foreclosures when he had, as he might, enforced his rights in one. In short, he could have compensation only for the work actually performed, which was regulated by law.

A review of the cases above cited, on the lines of distinction we have pointed out, indicate as a necessary result that under a mortgage containing a contract for the application of distinct liens to separate parcels of land, with the right expressed therein to treat each lien as separate, it is a matter of choice, in foreclosure by advertisement by the owner of the mortgage, to treat each lien as a distinct mortgage, or to sell the lots included in one mortgage upon one notice for foreclosure purposes, and that he is limited by his choice to apply his costs and disbursements to the

course he actually adopts in that respect. The theory that the mortgagee must minimize the costs and expenses of the foreclosure, although pursuing a strictly legal course in his foreclosure proceedings, upon equitable grounds, if it might be insisted upon in a foreclosure by action is not practical where a foreclosure is made under a power of sale by advertisement. The difficulties encountered by the learned trial court in estimating what should have been applied as expenses and costs in the proceedings at bar illustrate this. The terms of the contract which had been entered into by the parties were binding, and, if any seeming injustice has been done, it is difficult to discover how the owner of the mortgage could reach a sensible or practical result in availing himself of the right to foreclose separate liens, where the contract provides for such a course, by any equitable apportionment of the costs and disbursements that he could devise or rely upon as determinative. The contract established the rights of the owner of the mortgage to foreclose each lien separately, and, having adopted such a course, plaintiff may not now be heard to complain that incidental legal costs follow.

The judgment is reversed upon the appeal of the defendant, with directions that the trial court modify its findings in accordance with the views above expressed, that judgment may be ordered thereupon for defendant.