Argued at Pendleton May 6; affirmed May 28; argued on rehearing
September 25; former opinion overruled and case
reversed October 15, 1940

## LEONARD *v.* BENNETT ET AL.

(103 P. (2d) 732, 106 P. (2d) 542)

*S. J. Bischoff*, of Portland (Jerome S. Bischoff, of Portland, and Pat H. Donegan, of Burns, on the brief), for appellants.

*Hugh L. Biggs*, of Portland (J. W. McCulloch, of Portland, on the brief), for respondent.

KELLY, J.  On January 4, 1938, the plaintiff C. H. Leonard, instituted this suit to foreclose three mortgages owned by plaintiff upon certain parcels of real property which, at the time said mortgages were executed, were owned by defendants, Samuel R. Bennett and his wife Alice Bennett.  Later, all of said real property, except two parcels thereof, was transferred and conveyed to defendant corporation formed by said defendants Bennett under the name of the Bennett Realty Company, which corporation was dissolved on January 2, 1935, for nonpayment of annual license fees.

It is also alleged in plaintiff's complaint:

"That said corporation and the property thereof and belonging thereto, has been and at all times since said incorporation and now is owned by the said Samuel R. Bennett and Alice Bennett his wife, subject however to the liens, incumbrances and mortgages herein described and existing against said lands."

The three mortgages in suit were executed on April 28, 1925, November 6, 1930, and February 18, 1931, respectively.

On the 6th day of November, 1930, plaintiff took possession of the mortgaged property and ever since has had the possession, care, management and control of the same. Defendants made no appearance herein until eleven months and twenty days after the entry of an order of default, judgment, decree of foreclosure and sale of the mortgaged premises.

This order was entered on November 26, 1938. On November 16, 1939, defendants filed a motion herein for an order vacating the findings of fact, conclusions of law, order of default and the judgment and decree entered as above stated; and at said time defendants tendered for filing an answer to plaintiff's complaint in which answer defendants ask:

"(1) That plaintiff be required to render to defendants a full, true and correct account showing the name of the persons from whom plaintiff received revenue from the operation of the real properties described in the complaint, the date of each receipt of revenue, the amount of each receipt, the amount of hay harvested and sold during each year of plaintiff's operation, the names of all persons to whom payments were made, the amount of each payment, the date of each payment, and the purpose for which each payment was made;

(2) That the court determine, after the account is rendered, the amount of the indebtedness, if any there be owing, from defendants to plaintiff on each of the obligations described in the complaint; that in the event it is found that there is due and owing any balance on any of said obligations, that separate judgments be entered on each of said obligations;

(3) That in the event it is determined that the obligations have been paid in full, that the complaint be dismissed;

(4) That defendants recover their costs and disbursements herein incurred;

(5) And for such other and further relief as the court may deem just and proper.''

A controversy is disclosed by defendants' affidavit in support of their motion to vacate the order of default and decree of foreclosure and the affidavit of plaintiff in opposition to said motion. This controversy presents the question whether the revenues from the mortgaged premises during plaintiff's possession and control thereof were actually in excess of the credits given therefor by plaintiff.

A further conflict between the parties herein arises, because of defendants' assertion and plaintiff's denial that plaintiff agreed to give defendants notice before applying for an order of default against them.

On December 22, 1938, defendant Samuel R. Bennett instituted proceedings in the District Court of the United States for the District of Oregon under section 75 of the Bankruptcy Act, subdivisions (a) to (r).

On January 30, 1939, the premises in suit were sold to plaintiff at sheriff's sale pursuant to said decree of foreclosure.

On February 8, 1939, defendants filed objections to the confirmation of said sale and no action has been taken thereon.

On September 10, 1939, the federal court entered an order permitting defendant Samuel R. Bennett, within thirty days thereafter, to file his petition to be adjudicated a bankrupt under the provisions of section 75, subsection (e) of said bankruptcy act; and on November 14, 1939, said defendant Samuel R. Bennett filed such petition and was formally adjudicated a bankrupt. That ever since said date, the estate of said

defendant, Samuel R. Bennett, has been and is now in the possession and under the control of the Honorable Richard E. Kriesien, conciliation commissioner of Harney county, Oregon, as referee in said cause.

Subsection (e) of said section 75 of the bankruptcy act contains the following provision:

Subsection (e) Sec. 203. * * * "After the filing of the petition and prior to the confirmation or other disposition of the composition or extension proposal by the court, the *court shall exercise such control over the property of the farmer as the court decrees in the best interests of the farmer and his creditors.*"

Subsection (o) contains the following provisions:

"*Except upon petition made to and granted by the judge after hearing and report by the conciliation commissioner,* the following proceedings shall not be instituted, or if instituted, at any time prior to the filing of a petition under this section, shall not be maintained in any court or otherwise, against the farmer or his property, at any time after the filing of the petition under this section, and prior to the confirmation or other disposition of the composition or extension proposal by the court:

(1) Proceedings for any demand, debt, or account, including any money demand;

(2) Proceedings for foreclosure of a mortgage on land, * * *.

* * * * * * *

(4) Proceedings by way of execution, * * *.

(5) Proceedings to sell land under or in satisfaction of any judgment * * *.

(6) Seizure, distress, sale or other proceedings under an execution or under any lease, lien, chattel mortgage, condition sale agreement, crop payment agreement, or mortgage." Title 11, Bankruptcy, § 203, pp. 11 and 12, U. S. C. A.

Subsection (p) provides that:

"The prohibitions of subsection (o) shall apply to all judicial or official proceedings in any court or under the direction of any official, and shall apply to all creditors, public or private, and to all of the debtor's property, wherever located. All such property shall be under the sole jurisdiction and control of the court in bankruptcy, and subject to the payment of the debtor farmer's creditors as provided for in this section." Title 11, Bankruptcy, § 203, p. 12, U. S. C. A.

From the foregoing, it will be noted that the bankruptcy proceeding is pending in the federal court; that at the time defendants filed their motion to vacate and set aside the order of default judgment and decree, and tendered their answer to plaintiff's complaint, to-wit on November 16, 1939, defendant, Samuel R. Bennett, had been adjudicated a bankrupt; and that prior to said adjudication and subsequent to December 22, 1938, further proceedings in the case at bar could not be maintained, except upon petition made to and granted by the judge of the bankruptcy court.

We think that the sale by the sheriff upon execution of the mortgaged premises is invalid for the reason that it was made during the pendency of defendant Bennett's conciliation proceeding. *In re Neumann*, 12 F. Supp. 427, 30 Am. Bankr. Rep. (N. S.) 608.

We think also, that in order to protect defendants' right of redemption, with respect to the mortgages designated exhibits A and B respectively, the decree herein should have stated the amounts of plaintiff's judgment based upon each of said mortgages separately and should have directed the sale of each tract separately as described in the respective mortgages referred to in plaintiff's complaint as exhibits A and

B respectively, with the provision that the overplus, if any, derived from each of such sales in excess of the costs and expenses of foreclosure, and sale, and the respective amounts due upon said exhibits A and B, should be applied upon the amount due on the mortgage designated as exhibit C.

The effective bankruptcy act contains the following provisions:

''Any farmer failing to obtain the acceptance of a majority in number and amount of all creditors whose claims are affected by a composition and/or extension proposal, or if he feels aggrieved by the composition and/or extension, may amend his petition or answer, asking to be adjudged a bankrupt. Such farmer may, at the same time, or at the time of the first hearing, petition the court that all of his property, wherever located, whether pledged, encumbered, or unencumbered, be appraised, and that his unencumbered exemptions, and unencumbered interest or equity in his exemptions, as prescribed by State law, be set aside to him, and that he be allowed to retain possession, under the supervision and control of the court, of any part or parcel or all of the remainder of his property, including his encumbered exemptions, under the terms and conditions set forth in this section. Upon such a request being made, the referee, under the jurisdiction of the court, shall designate and appoint appraisers, as provided for in this Act. Such appraisers shall appraise all of the property of the debtor, wherever located, at its then fair and reasonable market value. The appraisals shall be made in all other respects with rights of objections, exceptions, and appeals, in accordance with this Act: Provided, That in proceedings under this section, either party may file objections, exceptions, and take appeals within four months from the date that the referee approves the appraisal.

(1) After the value of the debtor's property shall have been fixed by the appraisal herein provided, the

referee shall issue an order setting aside to such debtor his unencumbered exemptions, and his unencumbered interest or equity in his exemptions, as prescribed by the State law, and shall further order that the possession, under the supervision and control of the court, of any part or parcel or all of the remainder of the debtor's property shall remain in the debtor, as herein provided for, subject to all existing mortgages, liens, pledges, or encumbrances. All such existing mortgages, liens, pledges, or encumbrances shall remain in full force and effect, and the property covered by such mortgages, liens, pledges, or encumbrances shall be subject to the payment of the claims of the secured creditors, as their interests may appear.

(2) When the conditions set forth in this section have been complied with, the court shall stay all judicial or official proceedings in any court, or under the direction of any official, against the debtor or any of his property, for a period of three years. During such three years the debtor shall be permitted to retain possession of all or any part of his property, in the custody and under the supervision and control of the court, provided he pays a reasonable rental semiannually for that part of the property of which he retains possession. The first payment of such rental shall be made within one year of the date of the order staying proceedings, the amount and kind of such rental to be the usual customary rental in the community where the property is located, based upon the rental value, net income, and earning capacity of the property. Such rental shall be paid into court, to be used, first, for payment of taxes and upkeep of the property, and the remainder to be distributed among the secured and unsecured creditors, and applied on their claims, as their interests may appear. The court, in its discretion, if it deems it necessary to protect the creditors from loss by the estate, and/or to conserve the security, may order sold any unexempt perishable property of the debtor, or any unexempt personal property not reasonably necessary for the farming operations of

the debtor, such sale to be had at private or public sale, and may, in addition to the rental, require payments on the principal due and owing by the debtor to the secured or unsecured creditors, as their interests may appear, in accordance with the provisions of this Act, and may require such payments to be made quarterly, semiannually, or annually, not inconsistent with the protection of the rights of the creditors and the debtor's ability to pay, with a view to his financial rehabilitation.

(3) At the end of three years, or prior thereto, the debtor may pay into court the amount of the appraisal of the property of which he retains possession, including the amount of encumbrances on his exemptions, up to the amount of the appraisal, less the amount paid on principal: *Provided*, That upon request of any secured or unsecured creditor, or upon request of the debtor, the court shall cause a reappraisal of the debtor's property, or in its discretion set a date for hearing, and after such hearing, fix the value of the property, in accordance with the evidence submitted, and the debtor shall then pay the value so arrived at into court, less payments made on the principal, for distribution to all secured and unsecured creditors, as their interests may appear, and thereupon the court shall, by an order, turn over full possession and title of said property, free and clear of encumbrances to the debtor: *Provided*, That upon request in writing by any secured creditor or creditors, the court shall order the property upon which such secured creditors have a lien to be sold at public auction. The debtor shall have ninety days to redeem any property sold at such sale, by paying the amount for which any such property was sold, together with 5 per centum per annum interest, into court, and he may apply for his discharge, as provided for by this Act. If, however, the debtor at any time fails to comply with the provisions of this section, or with any orders of the court made pursuant to this section, or is unable to refinance himself within three years, the court may order the

appointment of a trustee, and order the property sold or otherwise disposed of as provided for in this Act.

(4) The conciliation commissioner, appointed under subsection (a) of section 75 of this Act, as amended, shall continue to act, and act as referee, when the farmer debtor amends his petition or answer, asking to be adjudged a bankrupt under the provisions of subsection (s) of section 75 of this Act, and continue so to act until the case has been finally disposed of. The conciliation commissioner, as such referee, shall receive such an additional fee for his services as may be allowed by the court, not to exceed $35 in any case, to be paid out of the bankrupt's estate. No additional fees or costs of administration or supervision of any kind shall be charged to the farmer debtor when or after he amends his petition or answer, asking to be adjudged a bankrupt, under subsection (s) of section 75 of this Act, but all such additional filing fees or costs of administration or supervision shall be charged against the bankrupt's estate. Conciliation commissioners and referees appointed under section 75 of this Act shall be entitled to transmit in the mails, free of postage, under cover of a penalty envelope, all matters which relate exclusively to the business of the courts, including notices to creditors. If, at the time that the farmer debtor amends his petition or answer, asking to be adjudged a bankrupt, a receiver is in charge of any of his property, such receiver shall be divested of possession, and the property returned to the possession of such farmer, under the provisions of this Act. The provisions of this Act shall be held to apply also to partnerships, common, entirety, joint, community ownerships, or to farming corporations where at least 75 per centum of the stock is owned by actual farmers, and any such parties may join in one petition.'' Moore's Bankruptcy Manual, pp. 247-251; Act, August 28, 1935, C. 792, §§ 1-6, 49 Stat. 942-945, Title 11, U. S. C. A. § 203, pp. 12, 13, 14 and 15.

We are of the opinion that upon appropriate application, the court in bankruptcy, may in its discretion,

appoint a receiver or trustee, who in turn, if in his judgment the facts justify such a course, might present the issues tendered in defendants' proffered answer herein either in the instant case or by a plenary suit. Secs. 11 and 70, Bankruptcy Act; U. S. Code, Title 11, ch. 3, sec. 29, and ch. 7, sec. 110; U. S. C. A., Title 11, ch. 3, sec. 29 and ch. 7, sec. 110; 3 F. C. A., p. 16 and p. 514. This is said without intending in the slightest degree to direct or advise the federal court or its officer or officers as to the course to be taken; but only as a reason which, we think tends strongly to justify our conclusion that in the absence of an order or other action of the bankruptcy court assenting to or authorizing further action by the state court, the trial court was, when it denied defendants' said motion, and is now without jurisdiction to make any affirmative order herein.

On January 2, 1940, the supreme court of the United States rendered an opinion in two cases wherein a petition of one Ernest Newton Kalb for composition and extension of time under section 75 of the bankruptcy act had been filed. This petition was filed and approved on October 2, 1934. On April 21, 1933, a judgment of foreclosure of certain mortgages executed by said Ernest Newton Kalb and his wife had been rendered in the county court of Walworth county, Wisconsin. On July 20, 1935, the sheriff sold the property to the mortgagees under the judgment; no stay of the foreclosure or of the subsequent action to enforce it was ever sought or granted in the state or bankruptcy court. On December 16, 1935, the mortgagees obtained a writ of assistance from the state court and on March 12, 1936, the sheriff executed the writ by ejecting Mr. and Mrs. Kalb and their family from the mortgaged farm.

One of the cases, designated in the opinion as No. 120, was an action in equity in the circuit court of Walworth county, Wisconsin, for restoration of possession, for cancellation of the sheriff's deed and for removal of the mortgagees from the farm. The trial court sustained a general demurrer to the complaint and dismissed it. The supreme court of Wisconsin affirmed the judgment of the trial court.

The other case considered in the opinion is designated therein as No. 121. It was a suit at law in the state court by Mr. Kalb against the mortgagees, the sheriff and the county court judge, who confirmed the foreclosure sale and issued the writ of assistance. Damages were sought for conspiracy to deprive Kalb of possession, for assault and battery for false imprisonment. An order was made by the trial court sustaining a general demurrer to the complaint and dismissing it. This order was affirmed by the supreme court of the state: *Kalb v. Luce,* 228 Wis. 519, 279 N. W. 685, 280 N. W. 725; *Kalb v. Feuerstein,* 228 Wis. 525, 279 N. W. 687, 280 N. W. 726; *Kalb v. Luce,* 231 Wis. 186, 285 N. W. 431; *Kalb v. Feuerstein,* 231 Wis. 185, 285 N. W. 431.

The United States supreme court reversed the Wisconsin court. We quote from the opinion:

"It is generally true that a judgment by a court of competent jurisdiction bears a presumption of regularity and is not thereafter subject to collateral attack. But Congress, because its power over the subject of bankruptcy is plenary, may by specific bankruptcy legislation create an exception to that principle and render judicial acts taken with respect to the person or property of a debtor whom the bankruptcy law protects nullities and vulnerable collaterally. Although the Walworth County Court had general jurisdiction over foreclosures under the law of Wisconsin, a per-

emptory prohibition by Congress in the exercise of its supreme power over bankruptcy that no State court have jurisdiction over a petitioning farmer-debtor or his property, would have rendered the confirmation of sale and its enforcement beyond the County Court's power and nullities subject to collateral attack. The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land. The Constitution grants Congress exclusive power to regulate bankruptcy and under this power Congress can limit the jurisdiction which courts, State or Federal, can exercise over the person and property of a debtor who duly invokes the bankruptcy law. If Congress has vested in the bankruptcy courts exclusive jurisdiction over farmer-debtors and their property, and has by its Act withdrawn from all other courts all power under any circumstances to maintain and enforce foreclosure proceedings against them, its Act is the supreme law of the land which all courts—State and Federal—must observe. The wisdom and desirability of an automatic statutory ouster of jurisdiction of all except bankruptcy courts over farmer-debtors and their property were considerations for Congress alone.

We think that the language and broad policy of the Frazier-Lemke Act conclusively demonstrate that Congress intended to, and did deprive the Wisconsin County court of the power and jurisdiction to continue or maintain in any manner the foreclosure proceedings against appellants without the consent after·hearing of the bankruptcy court in which the farmer's petition was then pending." *Kalb v. Feuerstein* and *Kalb v. Luce*, 308 U. S. 433, 60 S. Ct. 343, 84 L. Ed. 261.

The order of the circuit court from which this appeal has been prosecuted is affirmed. It is ordered that neither party hereto recover costs or disbursements herein.

RAND, C. J., and BELT and LUSK, JJ., concur.

Former opinion overruled and case reversed on rehearing
October 15, 1940

ON REHEARING
(106 P. (2d) 542)

KELLY, J.  In the original opinion herein, we held that the state court had been deprived of jurisdiction by the proceedings in the federal court under the Frazier-Lemke Act.  By a petition for rehearing defendants have called our attention to an affidavit by defendant C. H. Leonard, which on October 30, 1939, was filed in the United States District Court for the District of Oregon wherein said defendant stated:

"That the said Leonard has asserted in the proceedings now pending before this court and still contends that this court is without jurisdiction to determine the true amount of the indebtedness to him and that this question can only be determined upon application to the circuit court where the decree was made, because it is asserted that the said C. H. Leonard has instituted a suit to foreclose the said mortgages in the circuit court of the state of Oregon for Harney County; that a judgment was rendered in said suit fixing the amount of the indebtedness, and that the said judgment is binding upon this court, and therefore, this court is precluded from enquiring into the amount of the indebtedness."

\*  \*  \*  \*  \*

"That in view of the question raised by the said C. H. Leonard as to the power of this court to determine the extent of the indebtedness and the effect to be given to the said judgment and decree, I desire to institute a proceeding in the said circuit court to vacate said decree and to contest therein the issue of the amount of the indebtedness and the kind of decree to be entered therein, if any is to be entered at all, in order to avoid any question as to the proper tribunal to determine the issues referred to herein."

Defendants have also filed a certified copy of an order made by the judge of said United States District Court, the final paragraph of which is as follows:

"It is further ordered that pending the hearing before the conciliation commissioner provided for in said subsection (s)," [of Section 75 of the Bankruptcy Act], "all judicial or official proceedings in any court or under the direction of any official, against the debtor or any of his property shall be and they are temporarily stayed, not intending however to stay any motions or other proceedings available to the debtor under any law or statute of the United States or of the state of Oregon."

We are now of the opinion that, by the federal court's order, above quoted, the state court is given jurisdiction to determine the questions presented herein, namely, whether the order of default and decree of foreclosure should be vacated; whether defendants should be permitted to file their answer to plaintiff's complaint, and we also think that, if defendants are permitted to file such answer, the order of the federal court contemplates and consents to the determination by the state court of the issues therein tendered.

It is urged by defendants that the order of default and decree of foreclosure should be vacated because no notice was given to defendants of plaintiff's intention to apply to the court for an allowance in addition to the specific sums mentioned in plaintiff's prayer as set forth in his complaint; and no opportunity was afforded defendants to meet plaintiff's claim therefor.

It is also urged that said decree should be vacated because it awards a recovery in a lump sum instead of setting forth the respective amounts due upon each of the mortgages respectively and rendering separate judgments accordingly.

It is further urged that the said decree of foreclosure should be vacated because it directs the sale of the various tracts mortgaged all together and not separately.

We think that approved procedure is in accordance with defendants' contentions.

The amount for which plaintiff prayed judgment in his complaint is $9,440.29 with accruing interest at eight per cent from January 1, 1938. The amount awarded in said decree is $9,912.13 with accruing interest on the principal involved at eight per cent per annum from December 1, 1938.

The additional allowance in excess of the principal prayed for, amounting to $471.84, is based upon the amount alleged by plaintiff to be due him on account of the expenditures he made in managing the property in suit over and above the receipts derived therefrom.

Plaintiff cites section 2-1101, Oregon Code 1930, in support of the course thus taken. There, the judgment authorized after default of defendant in an action arising upon contract is restricted to the amount specified in the summons. In other actions, if it be necessary, to enable the court to give judgment or carry the same into effect, to take proof of any matter of fact, the court may order the entry of judgment to be delayed until such proof be taken and thereafter enter judgment in accordance with its own findings.

This court, in considering a somewhat similar issue, said:

"It is shown that default was taken without notice to either defendant or his attorney, while the case was under negotiations for an amicable compromise."

\* \* \* \* \*

"Where a defendant, against whom a default has been taken, when he thought that negotiations for a

settlement were still pending and he continued to so believe until proceedings upon execution were begun, afterwards promptly files his motion to vacate the default, he is entitled to relief: Li Sai Cheuk v. Lee Lung, 79 Or. 763 (146 P. 94, 156 P. 254). Courts are more favorable toward a defendant than a plaintiff in default. Plaintiff, who begins the litigation, generally may withdraw his suit and begin again without material prejudice, while the defendant cannot abandon the case against himself: Capalija v. Kulish, 101 Or. 666 (201 P. 545.'' *McAuliffe v. McAuliffe*, 136 Or. 168, 298 P. 239.

It is admitted that the parties agreed herein that further proceedings would not be taken until after the current [1938] haying year. The decree in suit was entered on November 26, 1938. Defendants argue that the agreement to forbear until the end of the haying year included the time reasonably necessary to sell the crops. Plaintiff understood the agreement to mean that he should wait only until the hay had been harvested before proceeding further.

The entry of a judgment for a sum not included in the prayer of plaintiff's complaint based upon the affidavit of plaintiff should not have been made until defendants had been given notice of the claim asserted by plaintiff, and thereafter afforded an opportunity to contest it. This is said without in the least intending to question the veracity and integrity of either party, but merely as a proper rule of procedure.

We think also that separate judgments should be entered for the respective amounts due upon each of the mortgages respectively, 42 C. J., Subject: Mortgages, p. 143, § 1738, citing *Knight v. Heafer*, 79 Ill. A. 374; *Rader v. Ervin*, 1 Mont. 632.

Where, as in the instant case, separate mortgages on different parcels are foreclosed at the same time,

a sale of the property en masse should not be ordered. 42 C. J. Subject: Mortgages, p. 149, § 1747, citing *Home Loan Assoc. v. Wilkins*, 66 Cal. 9, 4 P. 697; *Strode v. Miller*, 7 Idaho 16, 59 P. 893; *Snow v. Haberer*, 170 Ill. A. 265; *Bailey v. Green*, 68 Ill. A. 632; *Brown v. Kennicott*, 30 Ill. A. 89; *Hull v. King*, 38 Minn. 349, 37 N. W. 792; *Pancoast v. Duval*, 26 N. J. Eq. 445; *Ross v. Carroll*, 33 S. C. 202, 11 S. E. 760; *Hurxthal v. Hurxthal*, 45 W. Va. 584, 32 S. E. 237.

It is urged that defendants' motion to vacate the foreclosure decree and for permission to file an answer herein was not seasonably made. Defendants, acting under advice of counsel, sought the forum of the federal court under the Frazier-Lemke Act in which to litigate the issues herein tendered. Plaintiff objected upon the ground that the state court had exclusive jurisdiction. We are unwilling to hold that defendants were not diligent in their attempts to gain an adjudication of the issues in suit.

The original opinion herein is overruled, the sale of the mortgaged property upon execution and the judgment and decree of foreclosure rendered by the circuit court are vacated and set aside; the order of the circuit court overruling defendants' motion to vacate said judgment and decree and for leave to file an answer is reversed; and this cause is remanded for further proceedings not inconsistent herewith. It is further ordered that neither party recover costs or disbursements.

BEAN, J., not sitting.