Original proceeding in mandamus by the State of Florida on the relation of the Miami Leathercote Company, and others, against R.A. Gray, as Secretary of State. On motion to quash alternative writ.
Motion denied.
Relator, Miami Leathercote Company, Inc. published notice of its dissolution in "The Jewish Floridian" as required by Section 612.46, F.S.A. A certificate of such dissolution was rejected by the Secretary of State on the ground that he was in doubt as to "The Jewish Floridian" being a newspaper as contemplated by Section 49.03, Florida Statutes 1941, F.S.A. Alternative writ of mandamus was directed to respondent commanding him to accept and file in his office said certificate of corporate dissolution or show cause why he refuses to do so.
We are confronted with a motion to quash the alternative writ which raises the single question of whether or not "The Jewish Floridian" is a newspaper of general circulation in Dade County as contemplated by Sections 49.03 and 612.46, Florida Statutes 1941, F.S.A.
The respondent contends that this question should be answered in the negative on the theory that "The Jewish Floridian" is a class publication devoted primarily to the interests of the Jewish people and that its news-items of general public interest that circulate among the non-Jewish population in Dade County are inconsequential and insufficient to bring it within the requirements of the cited statutes.
It is agreed that "The Jewish Floridian" has a circulation of approximately 4000 copies, that 3300 copies go to paid subscribers, that 1000 copies are purchased each week by the Plaza Theatre, Miami Beach and are distributed by it to its patrons as good will advertising, that it is sold on news stands in Miami and is distributed throughout the United States, that 86.5 per cent of its paid subscribers are of the Jewish faith and the balance, or 13.5 per cent are non-Jewish, that Dade County has a population of 315,138, 40,000 of whom are Jewish people. It is also agreed that "The Jewish Floridian" is a weekly paper of sixteen pages, and that a portion of each issue is devoted to news of a general interest.
We think the rule is settled in this country that while a newspaper may be devoted primarily to the interests of a *Page 717 
special class or group, if it contains news of a general character and interest to the community, even though limited but not negligible in amount, it may qualify as a newspaper of general circulation under the law. Such is the doctrine of Tylee v. Hyde, 60 Fla. 389, 52 So. 968; Culclasure v. Consolidated Bond Mortgage Co., 94 Fla. 764, 114 So. 540; Hull v. King, 38 Minn. 349, 37 N.W. 792; In re Labor Journal, 190 Cal. 500, 213 P. 498; Lynn v. Allen, 145 Ind. 584, 44 N.E. 646, 33 L.R.A. 779, 57 Am.St.Rep. 223; Hernandez v. Drake, 81 Ill. 34.
Several copies of "The Jewish Floridian" are attached to and made a part of the record in this case. They have been examined and we are convinced that much of their contents would be of interest to the general reading public. There is no question that it is essentially a Jewish publication but in most of the communities of our country the interests of Jews and Gentiles so interfuse and overlap that it would be difficult to point out where the interest of one leaves off and the interest of the other takes up. If a distinction like this has any bearing on the case it would be as reasonable to distinguish between the interests of the Scotch and the Irish.
For these reasons and on authority of the cases cited we conclude that "The Jewish Floridian" is in law a newspaper of general circulation within the meaning of the statutes cited, so the motion to quash the alternative writ must be and is hereby denied.
It is so ordered.
ADAMS, C.J., and THOMAS, J., concur.
BARNS, J., concurring specially.