# CIRCUIT COURT OF THE CITY OF NORFOLK

In re Petition of Landmark
Communications, Inc.,
t/a *Inside Business*

December 14, 2000

Case No. (Law) L00-1814

BY JUDGE CHARLES E. POSTON

This action comes before the Court as a Petition to Publish Legal Notices or Advertisements. Having considered the Petitioner's submissions in support of its position, the Court denies the Petition.

Petitioner asserts that it satisfies the requirements of Code of Virginia § 8.01-324(B) for being qualified to publish legal notices and advertisements. That statute by its terms incorporates requirements listed in § 8.01-324(A), subsections 1 through 5. The subsections at issue are § 8.01-324(A)(2), which requires a newspaper to "[h]ave a general circulation in the area in which the notice is required to be published," and § 8.01-324(A)(1), "[h]ave a bona fide list of paying subscribers." The Court asked petitioner to analyze these requirements in light of the Supreme Court of North Carolina's decision in *Media, Inc. v. McDowell County*, 284 S.E.2d 457 (N.C. 1981). The Court in *Media* analyzed a petition similar to the one in the case at bar, under a North Carolina statute that required that notices be published "in a newspaper with a general circulation to paid subscribers" in the taxing unit. Petitioner is correct in the assertion that North Carolina combines the requirements of "general circulation" and "paid subscribers" in one subsection, while the Code of Virginia's identical requirements are in two separate subsections.

Addressing the "general circulation" requirement, Petitioner cites an opinion of the Virginia Attorney General for support, 1982-83 Va. Op. Atty. Gen. 372. The Attorney General noted that the Virginia Supreme Court had not interpreted the term "general circulation," and cited an earlier Attorney General's opinion setting forth three criteria for determining whether a newspaper is one of "general circulation": "(1) the diversity of interests of its

subscribers, (2) the diversity of the news published therein, and (3) the breadth of the area in which the newspaper is circulated or distributed." 1972-1973 Report of the Attorney General at 295. The 1972 opinion also stated "that whether a newspaper is one of 'general circulation' is therefore a matter of substance rather than size." *Id. Inside Business* has an audited weekly circulation of approximately 11,000 to 12,000 copies throughout the Hampton Roads area and has a full-time news staff that reports on local business developments, current events, governmental meetings, and other political, economic, and social topics. *Inside Business*'s subscribers are diverse and include businesses and individuals. The Court concludes that under the Attorney General's criteria, "general circulation" does not necessarily involve a substantial paid circulation; and, further, that under the facts of the instant case, *Inside Business* qualifies as a newspaper of "general circulation."

Turning to the provisions of § 8.01-324(A)(1), the Court must determine whether *Inside Business* has "a bona fide list of paying subscribers." Petitioner stated in its supplemental brief that, "Although the North Carolina statute required 'a general circulation to actual paid subscribers,' the court specifically stated that a newspaper need only have a *de minimis* number of paying subscribers to meet this element of the test." This misstates the Supreme Court of North Carolina's position on the issue. The Court stated that, under the statute, *more* than a *de minimis* number of paid subscribers is required to meet the statute's quantitative requirement, and held that the newspaper in that case had *more* than a *de minimis* number of paid subscribers.[1] Section 8.01-324(A)(1) does not include the language "more that a *de minimis* number" of actual paid subscribers, but requires a "bona fide list of paying subscribers." Interpreting the terms "bona fide list" to mean "more than *de minimis*" gives meaning to the statutory provision and provides a limited quantitative measure.

In the instant case, Petitioner stipulates that *Inside Business* has an audited weekly circulation of between 11,000 and 12,000 copies. Out of this total

---

[1] The 1982-83 Attorney General's opinion referred to *Media* in a footnote and states that one of the *Media* tests to determine if a publication is one of "general circulation" is that, "It must have more than a *de minimis* number of readers in the jurisdiction, in order to satisfy quantitative considerations inherent in the term." This statement is true but only addresses the Supreme Court of North Carolina's analysis of "general circulation," not its analysis of "actual paid subscribers," and thus the cited Attorney General's opinion does not support Petitioner's case with respect to the bona fide list of paid subscribers. Further, the newspaper cited in the Attorney General's opinion had a *paid* circulation of 3400 out of a total circulation of 4500.

circulation, approximately 6,000 copies are sent to subscribers in the Hampton Roads area. *Inside Business* maintains a list of nineteen paid subscribers, of which four are in Norfolk. The Norfolk paid subscribers, then, comprise approximately .06% of the total subscribers, and .03% of the total weekly circulation. This is a *de minimis* number of paid subscribers, and *Inside Business* cannot be said to maintain a "bona fide list" of paid subscribers.

The Court makes this finding notwithstanding the Petitioner's inclusion of an order from the Circuit Court of the City of Richmond authorizing *Style Weekly*, a Richmond publication to publish legal notices and advertisements in accordance with § 8.01-324(B). Petitioner has not provided any documentation in support of its assertion that *Style Weekly* "has a minimal paid circulation (15 paid subscribers) and a substantial free circulation of approximately 40,000 through publicly accessible racks." Further, even if such documentation were provided, the Court's analysis and holding in the instant case would not change.

The Court finds, for the reasons stated, that *Inside Business* does not meet the requirement of § 8.01-324(B), and the Petition is denied.