## CIRCUIT COURT OF THE CITY OF NORFOLK

In re Petition of Landmark
Communications, Inc.,
t/a *Inside Business*

April 8, 2002

Case No. (Law) L00-1814

BY JUDGE CHARLES E. POSTON

This case is before the Court upon Landmark Communications' petition for authorization to publish legal notices in its weekly newspaper *Inside Business*. The Court holds that governing statute, Va. Code § 8.01-324, does not require publications with a second-class mailing certificate to obtain court approval before publishing legal notices. Thus, while the Court believes *Inside Business* meets the statutory requirements for publishing legal notices, it declines to rule on the petitioner's motion as it is without legal authority to do so.

*Inside Business* has an audited weekly circulation of between 11,000 and 12,000. The publication uses two primary distribution channels, both of which are free to the reader. First, approximately 6,000 copies a week are mailed to subscribers who requested a copy in writing. Second, an undisclosed number of copies are distributed through open access public racks similar to those used to distribute real estate listings. *Inside Business* has only 19 paid subscribers. In a typical week, approximately 6,000 copies of *Inside Business* are sent to subscribers in the Hampton Roads area; 1,711 of these subscribers reside in Norfolk. More than half of *Inside Business* subscribers receive the publication by mail. While most of the articles in *Inside Business* cover economic and financial news, in a typical issue, one or two articles per issue cover national news or local events.

Under Virginia law, a newspaper must meet five requirements in order for the legal notices it contains to be effective. The paper must:

1. Have a bona fide list of paying subscribers;

2. Have been published and circulated at least once a week for twenty-four consecutive weeks. . . .

3. Have a general circulation in the area in which the notice is required to be published;

4. Be printed in the English language; and

5. Have a second-class mailing permit issued by the United States Postal Service.

Code of Virginia § 8.01-324(A). The Code also gives effect to the legal notices contained in papers without a second-class mailing certificate if certain additional requirements are met. Code § 8.01-324(B). Since the petitioner has a second-class mailing certificate, there is no necessity for it to seek from the court authority to publish legal notices under Code § 8.01-324(B).

The Court assumes that the petitioner filed its claim under Code § 8.01-324(B) because of the absence in Code § 8.01-324(A) of any procedure under which a publication with a second-class mailing certificate can petition a court for authority to publish legal notices. The obvious inference from the absence of an authorization procedure in Code § 8.01-324(A) when such a procedure is enumerated in Code § 8.01-324(B) is that formal court authorization is not required for publications with a second-class mailing certificate. This interpretation resonates with common sense because, in order to obtain a second-class mailing certificate (which entitles a publication to favorable postal rates), a publication must make formal application to the United States Postal Service.[1] Thus, it is reasonable to conclude that in framing § 8.01-324 the General Assembly found that a formal authorization procedure was unnecessary for publications with second-class mailing certificates.

Based upon this statutory construction, the Court believes the petitioner does not require the Court's approval in order to publish legal notices. However, it is, nevertheless, the Court's opinion that the petitioner meets the requirements of § 8.01-324(A). While *Inside Business* does not have a circulation comparable to Virginia's major regional newspapers such as *The Virginian-Pilot* or *The Richmond Times-Dispatch*, it does meet the broad requirements that courts have articulated for determining whether a publication is of general circulation. The seminal opinion on the meaning of

---

[1] There is no minimum circulation required to obtain a second-class mail certificate. *Mail Classification Schedule*, §§ 410 *et seq.*, Postal Rate Commission, 2001.

"general circulation" is *Great Southern Media v. McDowell County*, 294 S.E.2d 457 (N.C. 1981). In this decision, which draws extensively upon similar decisions in other jurisdictions, the North Carolina Supreme Court specified two primary criteria for determining whether a publication is of "general circulation":

> First, [whether] a newspaper [is] of general circulation is not determined by the number of its subscribers, but by the diversity of its subscribers. Second, that, even though a newspaper is of particular interest to a particular class of persons, yet, if it contains news of a general character and interest to the community, although the news may be limited in amount, it qualifies as a newspaper of general circulation.

*Id.* at 462-63 (*quoting Burak v. Ditson*, 229 N.W. 227 at 228 (1930)). Other courts have given a similarly broad interpretation to the requirement that a publication contain news of general interest. In *State ex rel. Miami Leathercote Co. v. Gray*, 39 So. 2d 716 (Fla. 1949), the Florida Supreme Court held that the *Jewish Floridian*, despite its primary appeal to the Jewish community, qualified as a paper of general circulation. In the case *In re Labor Journal*, 213 P. 498 (Cal. 1923), a California court held that a newspaper printed almost entirely in Spanish nevertheless had a "general circulation."

The Virginia Supreme Court has never interpreted the "general circulation" requirement; but, in a 1982 opinion, Attorney General Gerald Baliles offered a definition of the words "general circulation" similar to that given by the North Carolina Supreme Court in *Great Southern Media*. The Attorney General's Opinion articulated three criteria for determining whether a newspaper is of "general circulation": (1) the diversity of interests of its subscribers, (2) the diversity of the news published therein, and (3) the breadth of the area in which the newspaper is circulated or distributed. 1982-83 Va. Ops. Atty. Gen. 295. Under this test, whether a newspaper is of general circulation is a matter of the substance of its content rather than the size of its audience. Since *Inside Business* contains news of general interest, it qualifies as a paper of general circulation under the criteria stated in the cited authorities.

While *Inside Business* likely meets the statutory requirements for "general circulation" this Court does not hold that service by publication in *Inside*

*Business* or similar publications[2] would or would not pass constitutional muster if subjected to due process challenge under the Virginia or United States Constitution. "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

In summary, while the Court declines to grant formal permission to *Inside Business* to publish legal notices, the Court sees no *statutory* reason why notices published in *Inside Business* would not be legally effective.

---

[2] Publications like *Dolan's Virginia Observer*, *Style Weekly*, and the *Richmond Free Press* which were mentioned during the hearing on this petition appear to be similarly situated.