## CIRCUIT COURT OF FAIRFAX COUNTY

In re Washington Newspaper
Publishing Co., Inc.,
d/b/a The Washington Examiner

Case No. CL-2003-216720

BY JUDGE MICHAEL P. MCWEENY

October 24, 2006

This cause came before the Court on September 22 and 29, 2006, upon The Washington Newspaper Publishing Company, Inc.'s Petition for Renewal of Authority to Publish Legal Advertising pursuant to Virginia Code § 8.01-324. Evidence and argument were presented, after which the Court took the ruling under advisement.

*Background*

In 2003, the Journal Newspapers, Inc., t/a The Northern Virginia Journal, announced its intention to convert from a paid newspaper to a newspaper with free distribution effective September 8, 2003. Accordingly, it filed a Petition to be granted authority to continue to publish legal notices under its new format. In its Petition, it asserted that it would continue to have a list of paying subscribers after its conversion to a free newspaper. On August 29, 2003, an Order was entered by a judge of this court granting *The Northern Virginia Journal* "authority to publish ordinances, resolutions, notices, and advertisements required by law to be published in a newspaper in Fairfax County for a period of one year from the date of this order, with renewals

thereafter as authorized by statute." Although an Affidavit Required for Renewal was filed in 2004, no Order renewing authority appears to have been submitted.

On September 22, 2005, the Petitioner herein, The Washington Newspaper Publishing Company, Inc., d/b/a The Washington Examiner, filed an "Affidavit Supporting Petition for Authority" asserting that it was the successor in interest to *The Northern Virginia Journal*, having absorbed all of the *Journal* newspapers into one publication as of February 1, 2005. The Affidavit stated "*Journal* subscribers were among those who received *The Washington Examiner*." However, it did not state that it had a list of paying subscribers. In spite of this omission, an Order, describing *The Washington Examiner* as a newspaper of general circulation, was entered on September 28, 2005, granting the Petitioner "the authority to publish ordinances, resolutions, notices, and advertisements required by law." It is from this initial Order that the current Petition for Renewal of Authority arises.

## *Issue*

The question before the Court is whether *The Washington Examiner*, a free daily newspaper serving the D.C. Metropolitan area, fulfills the requirements established by Va. Code § 8.01-324, and thus should be granted the authority to publish legal notices.

## *Statutory Requirements*

Va. Code § 8.01-324(A) states:

Whenever any ordinance, resolution, notice, or advertisement is required by law to be published in a newspaper, such newspaper, in addition to any qualifications otherwise required by law, shall:
(1) Have a bona fide list of paying subscribers;
(2) Have been published and circulated at least once a week for twenty-four consecutive weeks without interruption for the dissemination of news of a general legal character;
(3) Have a general circulation in the area in which the notice is required to be published;
(4) Be printed in the English language; and
(5) Have a second-class mailing permit issued by the United States Postal Service.

Newspapers which fail to meet this last standard, those that do not hold a second-class mailing permit, may petition the circuit court for permission to publish legal advertising under Va. Code § 8.01-324(B). The court may grant such authority for a period of one year if the newspaper "meets the other requirements of this section," that is, the requirements of § 8.01-324(A)(1) through (4), as well as the additional requirements set forth in § 8.01-324(B).

It should be noted that, as the Petitioner lacks a second-class mailing permit, it is proceeding under § 8.01-324(B).

## Statutory Purpose

In any civil action, the Virginia General Assembly may prescribe the kind of notice and the manner in which it should be given if it is reasonable under the circumstances and affords the party affected a reasonable opportunity to be heard. *Eddine v. Eddine*, 12 Va. App. 760, 406 S.E.2d 914 (1991). The Virginia General Assembly allows service by publication in certain situations under Va. Code § 8.01-316 and prescribes what an order of publication must include under Va. Code § 8.01-317. Both sections are intended to protect the innocent party, provide the defendant with actual notice, and give him an opportunity to make his defense, if he has any. *McFarland v. McFarland*, 179 Va. 418, 19 S.E.2d 77 (1942).

Clearly, the purpose of Va. Code § 8.01-324 must be in accord with that of Va. Code § 8.01-317. Whereas Va. Code § 8.01-317 describes the what and how of an order of publication, § 8.01-324 describes where, that is, in what newspapers, an order may be published. The goal of Va. Code § 8.01-324 must be to protect the interests of parties whose rights may be affected by proceedings in the state's courts.

When an individual's legal, pecuniary, or proprietary rights may be affected by judicial or state action, due process requires that individual to be given notice of the relevant proceedings. "When notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S. Ct. 652, 94 L. Ed. 865 (1950). If the notice is of such a nature as reasonably to convey the information and to afford a reasonable time for an interested party to make an appearance, the Constitutional requirements are met. *Grannis v. Ordean*, 234 U.S. 385, 34 S. Ct. 779, 58 L. Ed. 1363 (1014); *Roller v. Holly*, 176 U.S. 398, 20 S. Ct. 410, 44 L. Ed. 520 (1900). Va. Code § 8.01-324 is the Virginia General Assembly's method for achieving this objective.

*Bona Fide List of Paying Subscribers*

The Petitioner has demonstrated compliance with the criteria set forth in Subsection B, (ii), (iii), and (iv), and, therefore, the sole question is whether it complies with (i), "meets the other requirements of this section," that is, Subsection A(1) through (4). Preliminarily, it is not challenged that *The Washington Examiner* is a newspaper of "general circulation," published in the English language, and published at least once per week for the required time; therefore, the question further is limited to whether it has "a bona fide list of paying subscribers."

As Petitioner acknowledges in its brief, the requirement of a "bona fide list of paying subscribers" is inherited from the United States Postal Service's "paid-subscriber rule," which allows a publisher to qualify for more favorable second-class mailing rates. The rule was established by Congress as part of its comprehensive postal classification system, the Act of March 3, 1879, ch. 180, § 7, 20 Stat. 355. Petitioner argues that the primary purpose for the federal regulation was to avoid subsidizing advertising material. The Court agrees that this was the major motivating factor in requiring a paid subscriber list; however, the paid subscriber rule also was Congress's and the USPS' attempt to *avoid* free speech issues by implementing an objective standard:

> The PRC (Postal Rate Commission) and the Board of Governors, like Congress, have selected objective evidence of customer demand rather than the more subjective standard of "newspaperness" as the primary distinguishing characteristic of second-class mail. *The objective evidence of a list of paid-subscribers has been chosen as the most useful tool, consistent with the desire to avoid postal censorship* to distinguish between second-class publications issued in response to reader demand and third-class matter primarily designed for advertising or other commercial purposes of the publisher.

*Enterprise, Inc. v. United States*, 833 F.2d 1216, 1218 (6th Cir. 1987) (holding that the USPS' "paid subscriber rule" did not violate the first and fifth amendments to the Constitution) (emphasis added).

Similarly, in adopting a "bona fide list of paying subscribers" as a requirement for newspapers wishing to publish legal advertising, the General Assembly has avoided the need for a protracted and subjective examination of each individual newspaper. A "bona fide list of paying subscribers" serves as a

proxy for gauging "reader demand" and thus the likelihood of a publication being seen by a wide audience and ideally, the interested party. It is the method the Virginia General Assembly has chosen to ensure that notice by publication in newspapers complies with the strictures of due process.

It is true that Va. Code § 8.01-324(A)(1) does not define "bona fide list of paying subscribers," nor is there any case law which interprets the term "bona fide" as it applies to this section of the Code. Therefore, the court first looks to the standard definition of "bona fide" as meaning either "made in good faith; without fraud or deceit" or "sincere; genuine." *Black's Law Dictionary*. Yet such a definition, without more, fails to add meaning to the statutory phrase. *Black's* notes that the term sometimes is used ambiguously, and, therefore, directs attention to the use of "bona fide" as a modifier, such as in the case of "bona fide operation." Used in that fashion, it has been held to mean "substantial, as distinguished from incidental, sporadic, or infrequent service." (citing *Goncz v. Interstate Commerce Commission*, 48 F. Supp. 286 (D. Mass., 1942). Applying such a definition would require that the term "bona fide list" mean at the least "more than *de minimis*," as Judge Poston of the Norfolk Circuit Court suggested in the first *In re Petition of Landmark Communications, Inc.* case. As he stated, this interpretation "gives some meaning to the statutory provision and provides a limited quantitative measure" to assist courts in their decisions. 54 Va. Cir. 248, 249 (2000). Upon consideration of the evidence presented to this Court *in camera*, the Court finds that the Petitioner's list is *de minimis* rather than substantial and does not meet the statutory requirement of "having a bona fide list of paying subscribers."

### *Petitioner's First Amendment Rights*

This court finds that Va. Code. § 8.01-324(A)(1) is not an unlawful attempt to "restrict expression because of its message, its ideas, its subject matter, or its content." *Police Department of Chicago v. Mosely*, 408 U.S. 92, 95, 92 S. Ct. 2286, 33 L. Ed. 2d 212 (1972). The purpose of Va. Code § 8.01-324(A)(1) is not to prohibit speech or even to subject it to "reasonable time, place, or manner restrictions." *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984). Rather, the purpose is to regulate the manner in which notice by publication is effectuated. Its objective is to protect the legal and proprietary interests of parties affected by action in the state's courts.

Moreover, Va. Code § 8.01-324(A)(1) does not distinguish between newspapers on the basis of their content, but rather on their maintenance of a "bona fide list of paying subscribers." In fact, Petitioner has repeatedly denied

that there is any difference, substantively or qualitatively, in the content of a newspaper that maintains a paid subscriber list and a free newspaper which does not. Because the Court finds Va. Code § 8.01-324(A)(1) to be content-neutral, strict scrutiny is inapplicable.

Petitioner has urged this Court to apply intermediate scrutiny on the grounds that "laws that single out the press, or certain elements thereof, for special treatment 'pose a particular danger of abuse by the State'." *Turner Broad. Sys. v. FCC*, 512 U.S. 622, 640-41, 114 S. Ct. 2445, 129 L. Ed. 2d 497 (1994). The Court concludes that Va. Code 8.01-324(A)(1) satisfies a test of intermediate scrutiny in which restrictions are valid provided that they are content neutral, that "they are narrowly tailored to serve a significant government interest, and that they leave open ample alternative channels for communication of the information." *Accord Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 807, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). It is clear that providing effective notice to parties affected by legal action is a significant government interest, and the Virginia General Assembly has chosen a content neutral objective standard to achieve this interest. There is no attempt to regulate the media in any way and there remain ample alternatives for communication of legal notices. The Court declines to find the statute unconstitutional or unconstitutional as applied.

### Conclusion

The foregoing analysis is based upon the statute as passed by the Virginia General Assembly. The Petitioner presents a strong case for the proposition that the free newspaper is a new form of publication not contemplated at the time the statute was drafted. Nevertheless, that constitutes an issue for the legislative branch rather than the judicial branch. The Petition of The Washington Newspaper Publishing Company, Inc., d/b/a The Washington Examiner, for renewal of authority to publish legal notices and advertising is denied.

### October 26, 2006

The Court has received the Motion for Reconsideration of the Opinion Letter of October 24, 2006. The Motion is denied without oral argument, and Mr. Plocki has been notified by phone on October 25, 2006, as the Order granting temporary and limited authority to conclude publication of legal notices commenced prior to October 29, 2006, must be entered by October 27, 2006.

It first is argued that reconsideration should be granted as the publisher continues to hold a valid second-class permit. Accepting that to be the case for the purposes of this motion, the Court still finds that *The Washington Examiner* fails to meet the requirement for a bona fide list of paying subscribers under Subsection A. It is true that the Norfolk Circuit Court deemed that court approval for publishing legal notices was not necessary under those circumstances; however, this Court respectfully disagrees with the reasoning of the decision of *In re Landmark Communs.*, 58 Va. Cir. 433 (Norfolk, 2002). The statute clearly requires a Petition to the Circuit Court as analyzed in the Opinion Letter of October 24, 2006. Other circuit court opinions always are persuasive, especially from such a distinguished colleague; however, they are not binding precedent.

Secondly, it is argued that this decision will harm legal advertisers without warning. This issue has been before the Fairfax Circuit Court for two months and renewal was denied administratively prior to the request for a hearing. Accepting that the alternative publications are more expensive than *The Washington Examiner*, the statutory requirements may not be waived for economic gain to the advertisers or the newspaper. As to "allowing Petitioner to unwind its present relationships," the Court has extended authority for over six additional weeks after previously extending authority for a month to allow further argument and careful consideration of the newspaper's positions. The decision cannot be totally unexpected, and there is nothing punitive in the ruling.

The Motion for Reconsideration is denied, and an Order must be submitted forthwith to avoid lapse in authority. If clarification is needed, the Court has ruled that no new legal advertisement may be accepted after October 29, but that the newspaper may continue to complete those legal notices accepted for publication prior to that date, with that limited authority ending on December 15, 2006.